THE STATE ex rel. DAILY RECORD COMPANY v. MOSES HARTMANN et al., Judges of Circuit Court.

In Banc, July 2, 1923.

1. **PUBLIC PRINTING: Award by Judges Sitting as Board: Question of Law.** Where the judges of the circuit court, in their return to the writ of mandamus, say that, sitting as a board to award to bidders a contract for the publication of legal advertisements, they found the relator to be the lowest and best bidder, and would have awarded the contract to relator had it not been for a provision of the statute requiring the newspaper receiving the contract to have a bona-fide circulation equal to five per cent of the city's inhabitants, the return takes from the case any question of the discretion of the board to determine which of the bids was "the lowest and best," and leaves for consideration, as a question of law, the pleaded question that such provision of the statute is invalid.

2. ------: **Necessary Circulation: Effect of Act of 1913.** An unconstitutional amendment to an existing statute is no amendment, and the statute remains just as if said amendment had not been attempted. It is not conceded, but if it be conceded that the amendment of 1913 to Section 591, Revised Statutes 1909, for-

State ex rel. Daily Record Co. v. Hartmann.

bidding an award of a contract for the publication of legal advertisements, in cities having a population of six hundred thousand or more, to newspapers which do not have a bona-fide circulation equal to five per cent of the number of said inhabitants, is invalid, in that it is not a general statute but applies to only one city, resort to the statutes then existing would have to be made, and when that is done it is manifest that a paper having a circulation of less than 3000 cannot be awarded such a contract, unless said statutes are themselves invalid. The statute was first enacted in 1879 and applied to all cities having one hundred thousand inhabitants or more, and forbade the awarding of a contract to a paper having less than 3000 circulation; that remained the law down to 1893, when said statute was changed to require the paper to have a circulation equal to five per cent of the inhabitants, and with such requirement added the statute remained unchanged until the amendment of 1913 was enacted; and hence, whether said amendment be valid or not, the contract cannot be awarded to a paper having a circulation less in number of copies than five per cent of the population of the city, unless that restriction itself brought about an unreasonable classification of cities and other sections of the State.

3. ———: ———: **Reasonable Classification: Cities of One Hundred Thousand Inhabitants.** The Legislature has a constitutional right to make reasonable classification of subjects, notwithstanding a general law might be passed, the reason being that a general law may not work out satisfactorily in actual practice. A statute applicable only to cities of one hundred thousand or more, and requiring that legal advertisements therein shall be published under contract with a newspaper having a circulation equal in number of copies to five per cent of its inhabitants, is not an unreasonable classification. Congested population has been the reasonable foundation for classification made by many statutes; and the purpose of publication of legal advertisements in newspapers being to give notice to the general public, there is abundant reason for a requirement that a newspaper publishing them shall have a circulation equal to five per cent of the city's inhabitants which would not apply to small cities or rural counties.

## Mandamus.

PEREMPTORY WRIT DENIED.

*Frank X. Hiemenz* and *Wilfley, Williams, McIntyre, Hensley & Nelson* for relator.

The second proviso of Section 10405, Revised Statutes 1919, is unconstitutional and void. (1) Said second proviso is in violation of subdivisions 32 and 33 of Section 53, Article IV, of the Constitution, in that it creates a classification without any reasonable basis therefor and enacts a special or local law where a general law could have been made applicable. State ex rel. Garesche v. Roach, 258 Mo. 541, 561; State ex rel. v. Miller, 100 Mo. 439, 448; Murnane v. St. Louis, 123 Mo. 479, 491; State v. Anslinger, 171 Mo. 600, 611; Henderson v. Koenig, 168 Mo. 356, 376; 1 Lewis' Sutherland on Stat. Con. (2 Ed.) 388. (2) Said second proviso is in violation of said subdivisions 32 and 33 of Section 53, Article IV, of the Constitution, in that it is limited to cities having a population of more than 600,000 as shown by the United States census of 1910 (said census being the last United States census taken prior to the enactment of said proviso). State ex rel. v. Turner, 210 Mo. 83; State ex rel. v. Williams, 232 Mo. 56, 72; State ex rel. v. Messerly, 198 Mo. 354; State ex rel. v. County Court, 89 Mo. 237. (3) There is nothing in the Constitution which requires or authorizes the Legislature to pass a law providing that in St. Louis alone newspapers which carry legal publications must have a certain percentage of circulation, but there is a provision in the Constitution which says that a special law shall not be passed where a general law can be made applicable, and this provision of the Constitution denies to the Legislature the power to pass a law fixing a percentage of circulation in St. Louis alone. If a percentage of circulation of a newspaper authorized to receive legal publications is a good thing in St. Louis or in cities of over 600,000 or in cities of over 100,000, then it inevitably follows that it would also be a good thing in the remaining portions of the State. That such a law could be made general no one will dispute. It is a well-known fact that out in the numerous counties of the State legal notices are too frequently published in some little newspaper published in some small town re-

mote from the county seat, and the persons interested in the legal publication and the interested public now has no protection against such abuse.

*Buder & Buder* and *Shepard Barclay, amici curiæ.*

(1)   The "last United States census," intended by the proviso in Section 10,405, refers to the time when any award of the printing is to be made, and not alone to the last census "taken prior to the enactment of said proviso," as claimed by the learned brief for relator (p. 10).   The figures of each "last census" are intended to apply to all future lettings of such printing.   Dunne v. Railway, 131 Mo. 1;   Beard v. Rowan, 1 McLean 135, 9 Pet. 317;   State ex rel. Flanningham v. Board, 16 Nev. 92;   Railroad v. Blackman, 63 Ill. 117;   Town v. Jenkins, 40 Barb. 574;   Stebbins v. Board, 2 McCrary, 196.   (2) The second proviso is neither a special nor local law, but a general law, and will apply to all persons or things which now or in future may come within its terms.   **State** v. Tolle, 71 Mo. 645; State v. Wofford, 121 Mo. 61; **State** ex rel. v. Higgins, 125 Mo. 364; Dunne v. Railway, 131 Mo. 1;   Young v. City, 152 Mo. 661;   Ex parte Loving, 178 Mo. 194;   State v. Speed, 183 Mo. 186;   State v. Keating, 202 Mo. 197.   (3)   If relator is right (as we deny) in supposing that the second *proviso* (which originated in Laws of 1893, p. 26) should be discarded as unconstitutional, the effect of its elimination would be to leave in force former laws (R. S. 1889, sec. 312, or R. S. 1899, sec. 4692) both of which required of the successful bidder a larger circulation than 3,000 copies.   The relator has no such circulation; and hence it would have no standing to obtain the remedy sought, because the old law would be an obvious bar.   State ex rel. v. Clark, 275 Mo. 95; Henderson v. Koenig, 168 Mo. 356.   (4)   The respondents have discretion to award the printing to the newspaper making the "lowest and best bid."   In a large city they do not abuse that discretion by rejecting the bid of relator (with a circulation of less than 3000) and award-

ing the printing to another newspaper having a circulation such as the second proviso requires. The latter was assuredly a "better" bidder, and the board was right in making its award accordingly, but, if in error, their action, being discretionary, should not be controlled by another court by writ of mandamus. State ex rel. v. McGrath, 91 Mo. 386; State ex rel. v. Hawkins, 130 Mo. App. 41; State ex rel. v. Meier, 142 Mo. App. 309; Anderson v. Schools, 122 Mo. 61; State v. Hermann, 63 Ohio St. 440; People v. Kent, 160 Ill. 655; Trapp v. Newport, 115 Ky. 840; People ex rel. v. Council, 78 N. Y. 33; 2 Dillon, Munic. Corp. (5 Ed.) sec. 811.

GRAVES, J.—The relator has made a fair outline of this case, and we adopt it, as follows:

"This is an original proceeding in mandamus brought by the State at the relation of the Daily Record Company against Honorable Moses Hartmann et al., Judges of the Eighth Judicial Circuit of the State of Missouri, comprising the city of St. Louis, sitting as a board under the provisions of Section 10405, Revised Statutes 1919, for the purpose of compelling respondents to award to relator a contract for printing all advertisements and judicial notices as therein provided.

"The petition for the writ was filed January 10, 1922, and on the same date this court ordered the issuance of an alternative writ of mandamus returnable on February 9, 1922.

"Thereafter, and in due time, the respondents, having waived the issuance of the alternative writ and having agreed to plead to the petition in lieu of the alternative writ, filed their return. Thereafter, relator filed a motion for judgment on the pleadings.

"There is, therefore, no dispute concerning the facts involved. Practically all the facts alleged in the petition are specifically admitted to be true in the respondents' return. The facts thus admitted may be stated as follows:

"The relator, a Missouri corporation, publishes in the city of St. Louis, Missouri, in the English language, a daily newspaper known as the St. Louis Daily Record, published daily, except Sundays. The principal purpose of said newspaper is to gather and print the minutes and proceedings of all the courts of record within the city of St. Louis, the Supreme Court, the St. Louis Court of Appeals, the United States District Court and Circuit Court of Appeals, together with the minutes and proceedings of all actions begun before justices of the peace of the city of St. Louis, together with a complete transcript of all real estate transfers in the city and county of St. Louis and transcript of judgments rendered by all courts of record situated in the city and county of St. Louis, the suits and actions filed daily in the office of the clerk of the circuit court and the United States court situated in the city of St. Louis, together with full and complete information of releases of mortgages, deeds of trust, satisfaction of judgments and chattel mortgages, filing and satisfaction of mechanics' liens, together with full and complete information and minutes of the proceedings in bankruptcy before the referee for the Eastern District of Missouri, a list of all public sales of real estate in the city and county under foreclosure or sale under execution or in partition. Said paper is commonly called the court paper of the city of St. Louis, and is almost wholly relied upon by the bar and general public for its information in such matters.

"The St. Louis Daily Record has an actual daily circulation in the city of St. Louis of 2,155 copies, within the State of Missouri of 2,219 copies, and without the State of Missouri of 11 copies. The rate of subscription to said paper is the sum of nine dollars per year, payable in monthly installments of seventy-five cents, by carrier, and the sum of $12 per year, payable in monthly installments by mail.

"On the 5th day of December, 1921, the respondents, comprising all the judges of the Circuit Court of the City

of St. Louis, acting as a board, pursuant to the provisions of Section 10405, Revised Statutes 1919, as aforesaid, caused to be published a notice, as provided by said act, that said board would on a certain day receive sealed proposals from daily newspapers published in the city of St. Louis, Missouri, for the publication of all advertisements, judicial notices and orders of publication required by law to be made. Pursuant to said notice, on the 31st day of December, 1921, respondents as such board met and received three sealed proposals, to wit: One from the Star-Chronicle Publishing Company, owners and publishers of the St. Louis Star; one from the American Press Association, owners and publishers of the St. Louis Times, and one from the Daily Record Company, relator herein, owners and publishers of the St. Louis Daily Record. Both the St. Louis Star and St. Louis Times are printed in the English language; the St. Louis Times is published daily, except Sunday, and the St. Louis Star is published daily, including Sunday. Both set forth in their bids that they had a bona-fide daily circulation, equal to five per cent of the total population of the city of St. Louis; the Daily Record Company, relator herein, set forth in its bid that it had a bona-fide daily circulation in the city of St. Louis of 2,155 copies and within the State of Missouri 2,219 copies and outside the State of Missouri 11 copies. All of the bidders, pursuant to said advertisement, bid on a basis of a square of 250 ems of agate type, one rate for the first insertion and another for each subsequent insertion. The Star-Chronicle Publishing Company for the St. Louis Star bid the sum of $1.33 per square of 250 ems agate type for the first and each subsequent insertion; the American Press, bidding for the St. Louis Times, bid the sum of $1.25 per square for the first insertion and the sum of $1.12½ for each subsequent insertion; the Daily Record Company, relator herein, bid the sum of 41⅔ cents per square of 250 ems of agate type for the first and all subsequent insertions.

"The American Press Association, in its bid for the St. Louis Times, in addition to bidding on the publication of advertisements, judicial notices and orders of publication, as required by the notice given by the judgment aforesaid, made a separate bid on public advertisements under the provisions of Section 10401, Revised Statutes 1919, at the rate of one dollar per square of 250 ems agate for the first insertion and fifty cents for each subsequent insertion, and bid the sum of twenty cents for the publication of the final settlement docket for each estate in course of administration in the Probate Court of the City of St. Louis, as required by law. The St. Louis Daily Record, in addition to bidding on the advertisements, judicial notices and orders of publication, under and pursuant to Section 10405, agreed in its bid to publish the final settlement docket of all estates in course of administration in the Probate Court of the City of St. Louis as its several terms, free of charge. Each bid was accompanied by a good and sufficient bond.

"The sealed proposals were opened publicly by respondents, and the Daily Record Company, relator herein, bidding for the St. Louis Daily Record, was found by said board to have named the lowest and best bid, and that its said bid was sufficiently definite and specific as required by said section, and was not in consequence of combination or from any other cause unreasonably high, but was, on the contrary, reasonable and just, and that the St. Louis Daily Record was in all things a fit and proper medium or newspaper in which to publish the notices as aforesaid, and respondents, sitting as a board, as aforesaid, found and stated that they would have awarded the printing of all of said publications to relator on its bid aforesaid, were it not for the provisions of the second proviso of Section 10405, Revised Statutes 1919, which proviso undertakes to prohibit respondents from awarding the contract to newspapers in cities having a population of more than 600,000 inhabitants as shown by the United States census of 1910, unless such

newspaper have a bona-fide daily circulation equal in number of copies to at least five per cent of the total population of such cities as shown by the last United States census; and respondents concluded that they, as said board, had no alternative in the premises but to reject the bid of the Daily Record Company, relator herein, and refuse to award it the contract, which they accordingly did, and said board will award the contract to the American Press aforesaid unless restrained by this Honorable Court.

"The city of St. Louis is the only city in the State having a population of more than 600,000.

"Section 10405, Revised Statutes 1919, as amended by the Act of March 10, 1913, Laws 1913, p. 97, is as follows:

" 'In all cities having a population of more than one hundred thousand inhabitants, a board consisting of the judges of the circuit court for such cities, or of the judicial circuit in which such city is situated, or a majority of the same, shall, on or before the first day of January, 1914, and every two years thereafter, cause to be published in some daily newspaper of said city a notice of at least twenty days, designating when and where said board will receive sealed proposals from daily newspapers published in said city for the publication of all advertisements, judicial notices and orders of publication required by law to be made. At the time and place so designated, said board, or a majority thereof, shall proceed publicly to open said bids, and shall award the printing of all said publications to the newspaper naming the lowest and best bid: *Provided*, however, first, that said bid shall be accompanied by a good and sufficient bond, in a sum to be fixed by said board, conditioned for the correct and faithful publication in said newspaper of all said advertisements, notices' and orders, in manner and form as required by law, and according to the schedule of rates named in said proposal, and upon said bond suit may be instituted in the name of the State, to the

use of any person aggrieved; second, that in cities having a population of more than six hundred thousand inhabitants, as shown by the last United States census, no paper shall be awarded the contract for said publication, unless it has a bona-fide daily circulation in number of copies equal to at least five per cent of the total population of such cities as shown by the United States census; third, that in case said board shall believe that said bids are not sufficiently definite or specific, or that in consequence of combinations, or from any cause, said bids are unreasonably high, it shall be at liberty to reject all proposals, in which case it shall proceed at once to re-advertise for proposals, as hereinbefore provided.'

"Relator predicates its right to the peremptory writ on the ground that that portion of Section 10405, Revised Statutes 1919, set forth in the second proviso aforesaid is in direct conflict with and in violation of Subdivisions 32 and 33 of Section 53 of Article IV of the Constitution of this State, in that it is a local or special law enacted where a general law could be made applicable, in this, that it creates a special class without a reasonable basis therefor, and, further, in that the Legislature in 1913, in referring to the last United States census, referred to the United States census of the year 1910, and the second proviso aforesaid could apply only to cities that had a population of more than 600,000 inhabitants, as shown by the census of 1910, and that no city in this State thereafter acquiring a population of more than 600,000 inhabitants could or would come under the provisions of said proviso.

"Respondents, in their return, state that, sitting as such ministerial board, they determined that they had no right to judicially construe or pass upon the constitutionality of said proviso in said statute, but state that they are extremely anxious to have the same determined by this Honorable Court."

I.  From the statement it will be observed that the first question is the validity of the second proviso in the

statute as it was amended by the Act of 1913. [Laws 1913, p. 97; R. S. 1919, sec. 10405.] This because the judges, acting as a board of award, say in their return that they would have awarded the contract to relator, but for this provision of the statute. Such return in effect means that this board considered the bid of relator "the lowest and best bid" within the meaning of the other provisions of the statute. The return therefore takes from the case the discretion of the board as to which is or was "the lowest and best bid." The return, in effect, says that whatever discretion the board had, it would have been exercised in favor of relator, but for the statute aforesaid. Respondents make this clear in every utterance thereon in the return. They find that the paper published by relator is a newspaper, within the meaning of the law. They affirmatively find facts which would preclude relator's paper from the bidding, if the proviso, supra, is valid. The question thus becomes a question of law.

Question of Law.

The Act of 1913 only changed the original statute (Sec. 591, R. S. 1909) in two respects. The original statute provided that this board should on or before January 1, 1910, and every two years thereafter, select the paper to do the public printing. The first change was changing the figures "1910" in the old statute to the figures "1914." The second change was to add after the word "that" in the 18th line of the old statute the words: "In cities having a population of more than six hundred thousand inhabitants, as shown by the last United States census." After the word "that" thus pointed out by the amendment, the original statute contained the words, "no paper shall be awarded the contract for said publication, unless it have a bona-fide daily circulation in number of copies equal to at least five per cent of the total population of such cities as shown by the last 'United States census.'"

Prior Statutes.

The foregoing language was augmented by the Act of 1913, by the addition (being placed before them) of

the words first above mentioned. It will thus be seen that the original statute covered all cities above 100,000, and that the eligibility of the bidding papers was limited to papers that had at least a circulation of five per cent of the population. The original law applied to St. Louis as well as to all cities having more than 100,000 inhabitants. The paper published by relator was not eligible under the old statute. [Sec. 591, R. S. 1909; R. S. 1899, sec. 4692; Laws 1893, p. 26.] The Act of 1893 first contained the provisions of five per cent of the population. The provisions (R. S. 1889, sec. 312) required a circulation "of at least three thousand copies." This Section 312 in the respect under consideration was the same as the Act of 1883. [Laws 1883, p. 25.]

To the same effect is the Act of 1879. [Laws 1879, sec. 1, p. 44.] We shall not go further back, if in fact there were previous acts touching the circulation of the paper. At least from 1879 the paper published by relator has been ineligible. It is true that the cities to which all these old laws applied were cities having more than 100,000 inhabitants, and therefore included St. Louis. So that up to the Act of 1913, now Section 10405, Revised Statutes 1919, there never was a law making the paper published by relator eligible to receive an award from this board. The situation during all these times was (1) a circulation of 3000, and (2) a circulation equal to five per cent of the population. Relator's paper hasn't even the requisite 3000 circulation. At this point another question injects itself. If the Act of 1913 (now Sec. 10405, R. S. 1919) is invalid, have we a law upon the subject at all? If we have, it must be the last previous law. Under that relator's paper is ineligible, as under all laws since 1879.

II. We have been unable to fathom the depth of the amendment made by the Act of 1913, supra. It evidently came from a source outside of the city of St. Louis. St. Louis has been covered by the law since 1879. This because, the sundry acts all applied to cities having more

than 100,000 inhabitants. First, there was the requirement of 3000 circulation, and later five per cent of population. This Act of 1913 left the judges of the circuit court in all cities of over 100,000 as a board to select a paper for legal publications. It left the provision for the notice they should give, and the bond (and the liabilities thereon) which should accompany the bid. This first portion of the act covers St. Louis, as well as all other cities having over 100,000 inhabitants. When it comes to the circulation of the paper, then only cities having more than 600,000 inhabitants are to be considered.

The force of the added words is to leave the board for the selection of a paper intact in all cities having over 100,000 inhabitants, but the circulation limitation made applicable only to cities having more than 600,000 population. From the general history of the legislation it is apparent that we might concede that the amendment created an unreasonable classification as between cities having over 100,000 population, and cities having 600,000 or more in population. We are not making the concession, but what we are saying is, that it might be conceded, and the result in this case would not be effected. If the amendment is unconstitutional, then the old law stands. In other words if the unconstitutional amendment fails, then the law before the amendment stands. An unconstitutional amendment is no amendment, and the old law is left unaffected. [People ex rel. Farrington v. Mensching, 187 N. Y. l. c. 27 et seq.; Eberle v. Michigan, 232 U. S. 700; Holt v. Village of Milford, 212 Ill. 418, l. c. 428; Norton v. Shelby County, 118 U. S. l. c. 422; State ex rel. v. Clark, 275 Mo. 95.]

To illustrate, the present law allows this board in Kansas City to select a paper without regard to circulation, whilst in St. Louis, the paper selected must have a circulation equal to five per cent of the population. So without ruling upon this question we for the purposes of this case, will concede that there is a bad classification. This, however, does not help relator, because under no

law since 1879 was the paper published by it eligible of selection. The real question (and we think from the briefs learned counsel so concede) is whether or not there must be a general law applicable alike to all parts of the State. In other words is the classification of cities over 100,000 in a class separate and apart from the rural districts, and smaller cities, unreasonable, and therefore in violation of the organic law?

III. If the amendment of 1913 fails, it is by reason of an unreasonable classification of cities. We have not said that it fails under the organic law, but we are conceding its unconstitutionality for the purposes of this case. We are then relegated to Section 591, Revised Statutes 1909, under which relator's paper is barred, in that such section provides:

"No paper shall be awarded the contract for said publication, unless it have a bona-fide daily circulation in number of copies equal to at least five per cent of the total population of such cities as shown by the last United States census."

As previously said this section and all previous laws from the Act of 1879 cover the city of St. Louis, because it is and was a city having over 100,000 inhabitants. A careful reading of the reply brief filed by learned counsel for relator reveals the idea that they in fact challenged all the laws from 1879 to date, wherein there is an attempt to place therein a required circulation of the paper as a prerequisite to its choice, in cities, and not generally. They are forced to this position, because the paper published by relator was not eligible for selection under any law from 1879 forward. Its circulation is less than 3000, and the laws require not less than 3000 circulation. Relator is thus driven to the position of urging that all these laws are invalid, because they fix a circulation for the paper in cities having more than 100,000 inhabitants, and do not cover rural sections of the State, and cities of a lesser population. In fact they urge that it is invalid because a general law could be passed. That we may not err, we quote from the reply brief thus:

"Under this point *amici curiæ* state that if relator is right in saying that the second proviso is, unconstitutional the effect of this is to leave in force the former law, which also required a five per cent circulation: *Amici curiæ* have certainly misunderstood our constitutional attack, or else they would not make the above claim. In our original brief we attacked the second proviso as being unconstitutional for three reasons, namely: (1) Because the classification of cities of 600,000 or over is an arbitrary and special classification; (2) the circulation requirement applying as it does to only a portion of the State is also class legislation; and (3) the act is limited in its application to cities having a population of 600,000 as shown by the United States census of 1910. In other words, we are directing our attack at the whole of the second proviso and each and every portion or phase of its language, and if we are right in our proposition that the proviso is unconstitutional because the circulation requirement is limited to only a small portion of the State when a general law could be made applicable then the language requiring a designated circulation falls out of the law, not only from the amended act, but also from the former law, which contains the same provision. *Amici curiæ* certainly cannot save themselves by jumping from unconstitutional provision in the amended act to the identical unconstitutional provision in the former act. So that if we are right in our attack upon the classification as to circulation requirement in only a portion of the State there would be no law that would prevent relators from being eligible to receive the award of this contract."

IV. That the lawmakers have the right to make reasonable classifications of subjects, notwithstanding that some kind of a general law might be passed, is a matter of universal recognition in this State. A general law could be passed to cover any particular subject, yet it might not work out well in actual practice. From the quotation from counsel last above set out, it appears that

they recognize this rule, and as a final analysis put their case upon an unreasonable classification as between cities of 100,000 and over and other cities and the rural sections.

Congested population has been the foundation for many reasonable classifications in the law. It has furnished the excuse for saying that a general law could not be made applicable. The Constitution recognizes that congested centers may be treated differently from rural sections, and as between themselves, according to population. The Constitution therefore classifies, or authorizes the classification, of cities and towns. The lawmakers have classified them, and granted to each different powers. But we need not revert to this, because after all the real question is whether or not the classification made in these several statutes is chimerical and captious, or reasonable. If there is a reasonable basis for the classification, the law must stand. If there is no reasonable basis the law must fall. This rule is so universal that citations would be superfluous.

Many reasons could be assigned for limited fixed circulation in the larger cities. The purpose of a notice is to reach the general reading public. The general reading public may never see a strictly legal publication of limited circulation. It is urged that such a publication, when designated as the legal publication, will be resorted to by those interested. In a sense this may be true, but this overlooks the fact that a general reader might become interested in the subject of a publication, if he chanced to see it, when he would not look up any particular paper. His interest would be awakened by the mere reading of the notice. In the other case he would have to have a pre-conceived interest in legal notices generally, and from such an interest, investigate as to where legal notices are published. We can see a difference.

In this case a general law would not suffice. In one of the exceedingly small counties a circulation of five hundred would reach a very large per cent of the people, whilst in large congested centers such a circulation would

amount to practically no notice at all. The matter of knowing just where to look for legal publications is only one element for consideration. It cannot be said that a circulation requirement for congested and heavily populated centers is so unreasonable as to make the law void on the ground of a classification without a reasonable basis, or on the ground that a general law could be made applicable. Other matters need not be noted. Laws of the character of the ones under review have been upheld since State ex rel. v. Tolle, 71 Mo. 645. This case involved Section 320 of the Laws of 1879, where there first appeared a requisite for some fixed character of circulation. So that we may concede the invalidity of the amendment in 1913 (which we do not do) and yet the relator has failed to show a right to the final writ.

The peremptory writ of mandamus is therefore denied. All concur.