THE STATE ex rel. JOSEPH W. SEKYRA et al. v. JOHN SCHMOLL, Clerk of Circuit Court of City of St. Louis.

In Banc, April 9, 1926.

1. **ACT OF** 1923: **Meaningless: Awkward Construction: Newspaper.** In construing a statute awkwardly worded it is proper to give it a meaning in accord with common sense when it is susceptible of such meaning. The Act of 1923 requiring judicial notices to be published "in some newspaper of such city of general circulation therein, and published for at least one year," does not mean that the legal notice shall be published for at least one year, but it means that the newspaper chosen shall be a newspaper of general circulation which has been published for at least one year at the time the contract is made.

2. ————: **Newspaper: Qualifications: General Circulation.** A requirement in the statute that the newspaper with which a contract is made for the publication of judicial notices shall be one of general circulation published in the city for at least one year furnishes a reasonable basis upon which the board of circuit judges may qualify a newspaper applying for a contract.

3. ————: ————: **Prices: Conflict in Sections.** There is no reasonable conflict in one section of an act providing that under named circumstances legal notices may be published in some other newspaper than those qualifying at a higher price than the rate named in the contract with the qualifying papers, and another section providing that no notice required by law to be published shall be valid unless published in a paper qualified by the act. The second section refers to all that is said in the previous section, which provides generally for the qualifications of newspapers seeking a contract, and allows exceptions in certain instances, and papers coming under the exceptions are qualified.

4. ————: **Title: Newspapers.** The title to the Act of 1923, Laws 1923, page 323, declaring that it is "an act to repeal" three named sections of the Revised Statutes 1919, "relating to public notices and advertisements in cities of more than 100,000 inhabitants, and to enact in lieu thereof three new sections relating to the same subject," is not defective in failing to say that the act repeals the law relating to publications in cities of more than 600,000 population, although one of the three sections repealed related to publication contracts in cities having 600,000 inhabitants or more. The

title expressly repeals those three sections, by referring to them as sections "relating to public notices and advertisements in cities of more than 100,000 inhabitants," and therefore gave sufficient notice that the new sections embodied in the act would deal with the same subject as did the three sections to be repealed by the act.

5. ————: ————: Purpose: Repeal: All Matter Contained in Repealed Sections: Classification of Cities. The Constitution (Sec. 28, art. 4) does not require each subdivision of the subject, and details germane to the general purpose of the act, to be mentioned in its title, Where the title gives notice that by the act certain sections of an existing statute are repealed and other sections are enacted in lieu of them, the constitutional provision relating to titles is not violated simply because the new act does not deal with all the matter contained in the sections repealed. The original act and the amendatory act both dealt with the publication of legal notices in cities having more than 100,000 inhabitants, but the original law further classified the subject by a separate provision relating to such cities as had 600,000 inhabitants or more, and the title of the amendatory act declared it was an act to repeal the three sections of the original act "relating to public notices and advertisements in cities of more than 100,000 inhabitants" and to enact three new sections having the same number and "relating to the same subject." *Held*, that, as the subject dealt with in both acts was the publication of legal notices in cities of over 100,000 inhabitants, the title of the amendatory act was not defective because the new act omitted the provision of the old relating to cities of 600,000 inhabitants or more, but is sufficiently comprehensive to embrace provisions relating to publication of legal notices in cities having 600,000 inhabitants.

6. ————: Special Law. An act providing for the publication of legal notices in cities of more than 100,000 inhabitants, in pursuance to a contract entered into by a board composed of the judges of the circuit court, is not a special or local law.

7. ————: ————: Propriety and Wisdom: Defeat of Its Own Purpose. The wisdom or propriety of a statute is not for judicial consideration. The courts are not authorized to determine the propriety of the classification of cities by population for the purpose of providing a uniform method for the publication of legal notices therein. It cannot be held that the Act of 1923, providing for contracts with papers of general circulation in cities having more than 100,000 inhabitants for the publication of judicial notices, is a special or local law on the theory that it defeats its own purposes, because large metropolitan newspapers cannot afford to publish the notices at the low maximum price fixed by the act, and therefore instead of

being an aid to the courts in administering justice is a detriment and hindrance. That is an argument that should be addressed to the law-making body, and not to courts.

8. ———: **Freedom of Contract.** The Act of 1923, fixing the maximum rates which a newspaper, under contract to publish legal notices, may charge for the publication of an order of publication to parties who cannot be served with personal process, does not impair the right of freedom of contract, because: (a) it is a rate paid for necessary service in the administration of justice, which may be taxed as costs, and (b), properly construed, it does not prevent a contract for a different rate.

9. ———: **Alternative Right: Invalid Separable Provision: Revival of Right under Repealed Section.** Relators pray for a writ of mandamus commanding the Clerk of the Circuit Court of the City of St. Louis to designate a newspaper wherein they can publish an order of publication in a case pending in said court, and allege that the clerk has refused to designate a newspaper in which the order might be published, as required by Section 10406, Revised Statutes 1919. This provision, authorizing the clerk, upon the failure of the board of circuit judges to contract with a newspaper for the publication of legal notices, to designate a paper in which such notice could be published, was in said Section 10406, but that section was repealed by the Act of 1923, and from the new section enacted in lieu thereof said provision was omitted, and in lieu of it was inserted a provision that the judge of the court having jurisdiction of the subject-matter, if he deemed it for the best interest of the parties, might authorize the publication in any other newspaper published in the city. Relators complain of this provision in new Section 10406 which authorizes the judge to order publication in other newspapers than those qualifying under the provisions of the Act of 1923. *Held*, that, the particular part of the old section under which relators claim they have a right to a peremptory writ directed to the clerk having been repealed by this valid Act of 1923, it does not matter what alternative provisions may appear in the new act, nor does it matter if this particular alternative provision is unconstitutional. Being separable, its invalidity would not invalidate the rest of the act, nor the principal clause repealing the old sections, and relators are not entitled to a peremptory writ on the theory that the provision relating to a designation of a newspaper by the clerk contained in the repealed section is still in force.

Constitutional Law, 12 C. J., Section 390, p. 887, n. 38; p. 890, n. 53; Section 460, p. 951, n. 41 New. Newspapers, 29 Cyc., p. 697, n. 21, p. 698, n. 28 New. Notice, 29 Cyc. p. 1120, n. 67 New. Statutes, 36 Cyc., p. 976, n. 27; p. 985, n. 69; p. 987, n. 73; p. 1028, n. 24; p. 1029, n. 25; p. 1031, n. 31, 33; p. 1032, n. 41; p. 1039, n. 77; p. 1103, n. 94; p. 1108, n. 39.

## Mandamus.

ALTERNATIVE WRIT QUASHED.

*Buder & Buder* and *A. W. Wenger* for relators.

(1) The Act of 1923, Laws 1923, p. 324, is unconstitutional and void because it violates Subdivisions 32 and 33 of Section 53 of Article IV of the Constitution, in creating a special or local law where a general law could have been made applicable, and creating, a special law by the partial repeal of a general law without any reasonable basis therefor, and because such law defeats the purpose of all statutes relating to service by publication by fixing a low and arbitrary maximum-price limitation, so that no newspaper of general circulation can carry such notices and publications. State ex rel. v. Roach, 258 Mo. 541; State ex rel. v. Miller, 100 Mo. 448; State ex rel. v. Revelle, 257 Mo. 540; Murnane v. St. Louis, 123 Mo. 491; State v. Anslinger, 171 Mo. 611; Henderson v. Koenig, 168 Mo. 376; 1 Lewis' Sutherland, Stat. Cons. (2 Ed.) p. 388. (2) Said act is unconstitutional and void because it violates Subdivision 26 of Section 53 of Article IV of the Constitution, by attempting to create a law granting to small publications in large cities a special right and privilege by fixing a low, arbitrary and prohibitive rate for the publication of legal notices. State ex inf. v. Washburn, 167 Mo. 690. (3) A newspaper is neither a public utility nor a *quasi*-public corporation, and its rates, charges and freedom to contract are not subject to regulation on the part of the Legislature. Chamber of Commerce Pub. Co. v. Tribune Co., 286 Fed. 111. (4) Said act is unconstitutional and void because it violates Section 4 and Section 30 of Article II of the Constitution, as also Section 1 of Amendment XIV of the Constitution of the United States, in that it abridges the privilege and immunity of citizens of the United States, denies to them the equal protection of the laws and deprives them of liberty, property and the enjoy-

ment of the gains of their industry. State v. Tie & Lumber Co., 181 Mo. 536; State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; State v. Railroad, 242 Mo. 377; Lochner v. New York, 198 U. S. 45; State ex rel. v. Vandiver, 222 Mo. 264. (5) Said act is unconstitutional and void, because it is part of a repealatory act and the title does not clearly express the subject thereof; it attempts to change the old provisions in material respects as they affected the city of St. Louis by fixing a price limitation and eliminating the circulation requirement theretofore in effect, without making specific mention of such purpose in the title, and violates Section 28 of Article IV of the Constitution. Hardware Co. v. Fisher, 269 Mo. 278; State ex rel. v. Gideon 210 S. W. 358; State ex rel. v. Revelle, 257 Mo. 529; Williams v. Railroad, 233 Mo. 676; State v. Burgdoerfer, 107 Mo. 30; State v. Great Western Coffee Co., 171 Mo. 643; Witzmann v. Railroad, 131 Mo. 618; State ex rel. v. Edwards, 241 S. W. 949. (6) The proviso, ''Provided, further, that the board receiving the applications of newspapers for qualification under this act may, in all cases where the judge of the court having jurisdiction over the subject-matter shall deem it for the best interest of the parties in interest, authorize the publication of legal notices in any other newspaper published in any such city than the newspaper qualifying under the provisions of this act, and at a higher rate than the rate in this act or otherwise legally established,'' is a delegation to the judicial department of the exercise of powers properly belonging to the legislative department and is violative of Article III of the Constitution of Missouri. State ex rel. v. Wright, 251 Mo. 325; State ex rel. v. Pond, 93 Mo. 606. (7) If an existing statute be amended and re-enacted, or an existing statute be repealed and a new section re-enacted in its stead, and the new act is unconstitutional, then the original statute remains in force and effect. State ex rel. v. Clark, 275 Mo. 102; Henderson v. Koenig, 168 Mo. 356; Lexington v. Lafayette Co. Bank, 165 Mo. 671; State ex rel. v. Mills, 231

Mo. 498; State ex rel. v. Gantt, 274 Mo. 490; Eberle v. Michigan, 232 U. S. 700; State v. Rice, 36 L. R. A. (N. S.) 344; 36 Cyc. 1056.

*Frank X. Hiemenz, James T. Blair* and *Foristel, Mudd, Hezel & Habenicht* for respondent.

(1)  One who seeks the aid of the writ of mandamus must show himself clearly entitled thereto. State ex rel. Porter v. Hudson, 226 Mo. 239; State ex rel. Kern v. Stone, 269 Mo. 334; State ex rel. Dolman v. Dickey, 280 Mo. 536.  (2)  The classification by the Legislature of cities of one hundred thousand inhabitants or over for the purpose of regulating the publication of judicial notices, orders of publication and advertisements, is a · proper classification which has a reasonable basis therefor, and is a general law affecting all persons and things of a class and does not affect particular persons or things of a class. State ex rel. Lionberger v. Tolle, 71 Mo. 645; State v. Hays, 88 Mo. 344; State v. Tower, 185 Mo. 79; State v. Keating, 202 Mo. 197; Bambrich Const. Co. v. Realty Co., 270 Mo. 450; Forgrave v. County, 282 Mo. 599; State ex rel. Daily Record Co., Hartman, 253 S. W. 991.  (3)  The title to the Act of 1923, Laws 1923, p. 324, is good.  It contains but one subject, which is clearly expressed in its title. Asel v. City of Jefferson, 287 Mo. 205; Booth v. Scott, 276 Mo. 21; Nelly v. Ins. Co., 250 Mo. 467; Dorris Motor Car Co. v. Colburn, 270 S. W. 343; Barnes v. Pikey, 269 Mo. 404; Ferguson v. Gentry, 206 Mo. 193; State v. Doerring, 194 Mo. 408; State ex rel. v. Ransom, 73 Mo. 86; St. Louis v. Tieffel, 42 Mo. 588; State ex rel. v. County Court, 128 Mo. 446; State v. Smith, 233 Mo. 255.  (4)  The first proviso of Section 10406 as re-enacted by the Act of 1923 is valid and constitutional for the reason that the Legislature has full power to regulate costs in judicial proceedings, and the Legislature, in fixing the maximum to be allowed to or charged by a newspaper for publishing judicial notices and advertisements, had for its object the regu-

lation of costs in judicial proceedings. It does not arbitrarily interfere with the right to contract; it merely fixes a maximum charge, taxable as costs. Record Pub. Co. v. Monson, 213 Pac. 13; Daily v. Ely, 53 N. J. Eq. 270; Star v. Moore, 114 N. Y. Supp. 753. (5) A part of an act may be declared unconstitutional and the remainder upheld. State ex rel. Harvey v. Wright, 251 Mo. 325; State ex rel. Tolerton v. Gordon, 236 Mo. 142; State ex rel. v. Gordon, 268 Mo. 713; State ex rel. v. Hackmann, 275 Mo. 534; State ex rel. Niedemeyer v. Hackmann, 292 Mo. 27; State ex inf. Hadley v. Washburn, 167 Mo. 697; State ex rel. Bixby v. Kreizmann, 241 Mo. 246; Nally v. Ins. Co., 250 Mo. 467. If the provisions of the Act of 1923, attacked as unconstitutional by relators, are held invalid, sufficient remains in the act to form a good, workable law properly regulating public notices in cities of 100,000 inhabitants or over. (6) A service that cannot be demanded or compelled by law, nevertheless, can be regulated by statute; it does not necessarily have to be public in its nature or governed by any special franchise or governmental grant to be subject to regulation under the police power. Bank v. Haskell, 219 U. S. 104. (7) It is not necessary to revive Secs. 10405, 10406, 10407, R. S. 1919, to have law on the subject of the publication of legal and judicial notices. The law applicable to the balance of the State would apply if the Act of 1923 is declared invalid and the repealing clause held good.

WHITE, J.—The relators in September, 1925, filed in this court a petition praying for a writ of mandamus commanding the Clerk of the Circuit Court of the City of St. Louis to designate a newspaper wherein the relators could publish an order of publication in a case then pending in that court. The case was one where the relators claimed possession and title to a certain tract of land in the city of St. Louis, description of which was set out. The petition set forth that other persons named claimed some interest in the property, and among the

defendants were the unknown heirs of former claimants to the title, and prayed the court to ascertain and determine the title. An affidavit filed with the petition alleged facts justifying an order of publication, and the court accordingly made the order.

The petition filed in this court avers that the clerk has refused to designate a newspaper in which the order of publication might be published, as required by Section 10406, Revised Statutes 1919.

The respondent entered his appearance in this court, waiving the issuance of an alternative writ and agreeing to plead to the petition in lieu of such writ, and thereafter filed his return, to which relators on December 21, 1925, filed a reply.

The facts are undisputed, the return admitting all the relevant facts set forth in the petition. The only disagreement between the parties is as to the construction and the applicability of certain statutes. The case was argued here as if on a motion for judgment on the pleadings.

The statutes under which the plaintiff proceeds appear in the revision of 1919, Chapter 94, relating to public notices and advertisements. Section 10405, Revised Statutes 1919, provides that in cities having a population of more than 100,000 inhabitants, a board, consisting of the judges of the circuit court of such cities, on the first day of January, every two years, shall cause to be published in some daily paper a notice designating when and where the board shall receive proposals from the daily newspapers published in said city for the publication of judicial notices, etc. That at the time and place so designated the board, or a majority thereof, should open the bids and award the printing of all such publications to the newspaper naming the lowest and best bid. The section then requires that a bond shall accompany the bid for the faithful publication of such notices, etc., and provides further that in cities having a population of more than 600,000, no paper shall be awarded the contract for such publication unless its bona-fide circulation shall be five

per cent of the total population of such city. The section has further conditions under which the board might reject any and all bids and proceed to readvertise.

Section 10406 provides that in case the award of such publication shall not have been made until after the expiration of the previous contract, the parties interested may, or in case of a proceeding pending in the court, the clerks shall, designate in what newspaper the publication should be printed. It is this provision of Section 10406 on which the relators claim the right to compel the clerk to designate the newspaper to publish the order of publication. Section 10407 says the publication of such notice in the newspapers designated by the board shall be valid and sufficient, but nothing in this chapter should invalidate a publication of said notice in some other newspaper by the mutual agreement of the parties in interest.

Respondent contends that Sections 10405, 10406, 10407, were repealed by the Act of 1923, Laws 1923, pages 323-325. That act expressly repeals those sections and enacts other sections of the same numbers in lieu thereof. The new Section 10405 requires that, in cities having a population of 100,000 inhabitants or more, all judicial notices shall be published "in some daily newspaper of such city of general circulation therein, and published for at least one year." New Section 10406 provides for an advertisement printed in some daily newspaper, designating the time and place where the board, consisting of the judges of the circuit court, shall hold a hearing to determine what newspapers in said cities are qualified to publish notices, etc., and then proceeds as follows:

". . . and all newspapers in said cities desiring to publish such notices and advertisements shall, on or prior to the date of each such hearing, file with the board a petition verified by the affidavit of one of the publishers thereof, that such newspaper has the qualifications set forth in the previous section and desires to be designated as a qualified newspaper under the provisions of the preceding section; and a majority of the board at such time and place shall determine what newspaper so petition-

ing are [is] qualified under the provisions of the preceding section and shall make a record thereof and shall file a copy thereof with the clerk of all courts of record within such cities, and thereupon such newspapers shall be deemed and considered by all courts and officers of this State to be qualified under the provisions of the preceding section; Provided, however, that there shall not be charged by or allowed to any such newspaper for such publications a higher rate than one dollar per square of two hundred and fifty ems agate for the first insertion and fifty cents for each subsequent insertion, fractional squares or parts of squares to be charged for in the same proportion; 'Provided, however, that said petition shall be accompanied by a good and sufficient bond, in a sum to be fixed by said board, conditioned for the correct and faithful publication in said newspaper of all said advertisements, notices and orders, in manner and form as required by law, and according to the schedule of rates fixed herein.' 'Provided further that the board receiving the applications of newspapers for qualification under this act may, in all cases where the judge of the court having jurisdiction over the subject-matter shall deem it for the best interest of the parties in interest, authorize the publication of legal notices in any other newspaper published in any such city, than the newspaper qualifying under the provisions of this act, and at a higher rate than the rate in this act or otherwise legally established.' ''

New Section 10407 is as follows: "*Public notice or advertisement to be valid, when.*—No public notice or advertisement directed by any court or required by law to be published in a newspaper, in cities of one hundred thousand inhabitants or more, shall be valid unless it be published in a daily newspaper qualified to publish such notices and advertisements under the provisions of this act."

It will be perceived that the differences between the old sections and the new ones are these: Under the old law the contract for the printing was let to the lowest

bidder.    In the new Section 10406 the price is fixed.
Under the old law there was a provision regarding cities
having a population of more than 600,000, where it was
required that the paper containing the contract should
have a circulation of *five per cent* of the population.  In
the new law, all papers obtaining the contract were re-
quired to be papers of *general circulation* in the city.
The requirement in the old law that the clerk at the ex-
piration of a contract not renewed shall designate the
newspaper in which the publication shall be had, is not
in the new law.   The relators contend that the provision
relating to the duty of the clerk is still in force because
the Act of 1923 is unconstitutional on several grounds
which we will now consider.

I.    Relator's first position is that the Act of 1923
is vague, uncertain and meaningless.   It is said that
Section 10405, part of which is quoted above, requires
the order of publication to be published for at
least one year.   The section is awkwardly word-
ed, but there is no doubt about the meaning of
the language used.   It is the *daily newspaper* and not
the order of publication which must have been pub-
lished for one year.   In construing language of that kind
it is proper to give it a meaning which is in accord with
common sense when it is susceptible of such meaning.

<span>Vague<br>Statute.</span>

It is further said that there is no reasonable basis
upon which the circuit judges are authorized to qualify
newspapers.   The paper shall be one of general circula-
tion and shall have been published in the city for one
year.   Those are the sufficient qualifications required of
papers in filing their statement of qualifications verified
by affidavit with the board.

It is further said there is a conflict between Sections
10406 and 10407, because the former section provides that
under certain circumstances the legal notices may be
published in some other paper than those qualifying at
a higher rate than that designated, while Section 10407
provides that no notice required by law to be published

shall be valid unless it be published in a paper qualified by the act. It will be noticed that these last two objections are not based on the theory that they render this act unconstitutional and therefore if sustained would be of no effect on the point that the provision in the old law relating to the duty of the clerk is repealed. But a reasonable construction of Sections 10406 and 10407 of the new act shows no such conflict. The requirement under Section 10407, that the notice must be published in a paper qualified, refers, of course, to all that is said in the previous section which provides generally for the qualifications of the newspapers and allows exceptions in certain instances. The papers coming under the exceptions are qualified under the requirement of Section 10407.

II. It is contended that the title of the Act of 1923 is defective and renders the act unconstitutional. The title is as follows:

"An act to repeal Sections 10405, 10406 and 10407 of Chapter 94, Revised Statutes of Missouri 1919, relating to public notices and advertisements in cities of more than 100,000 inhabitants and to enact in lieu thereof three new sections relating to the same subject to be designated as Sections 10405, 10406 and 10407."

Title.

In the relator's petition for the writ they say that the act conflicts with Section 28, Article IV, of the Constitution, by failing to express in its title that the act repeals the law as to publications in cities of more than 600,000. The title expressly says that it repeals Sections 10405, 10406 and 10407, Revised Statutes 1919, relating to published notices in cities of *more than* 100,000.

The rule in relation to such matters was stated by this court in Asel v. City of Jefferson, 287 Mo. 195, l. c. 205, where it is said: "The mere reference, in the title of the Act of 1919, to the Act of 1915, without other description of the subject-matter, under the rulings by this court, give sufficient notice that the new section to be

enacted would deal with the same subject as contained in the section of the Act of 1915 to be repealed.''

Other cases were there cited, where the question has been decided under the varying circumstances many times by this court. The reference to Sections 10405, 10406 and 10407, in the title to the Act of 1923, repealing them and enacting others in lieu of them, means that the same subject dealt with in the former sections was to be dealt with in the amended sections, and that is, the publication of notices required by law or by an order of court, mentioned in Section 10404 of the same chapter, in cities containing a population of *more than* 100,000.

The argument of the relator is that the purpose of the act was to affect cities of more than 600,000 inhabitants and that the title to the new act is misleading in that it does not specifically state that purpose. The only difference between the old law and the Act of 1923, in relation to cities of 600,000 inhabitants and over, was that the old law provided a definite way to ascertain the general circulation of the paper to be awarded the contract. The effect of the relator's argument is this: While the original statute and the amendatory act both deal with cities having more than 100,000 population, the original law further classified the subject by a separate provision relating to such cities in excess of 600,000. That is, the old law, in addition to the general subject, further classifies cities in one respect. The new law deals with the same general subject without such classification. The only thing in the amendment to which appellant objects is an omission from the new act of a provision in the old. The original Section 10405 provided a test for the circulation of papers published in cities of over 600,-000. The new law contains no such test. According to relator's argument, the title to the act is not comprehensive enough, because the act itself fails to cover certain matter dealt with in the original act but not in the new act.

Section 28, Article IV, of the Constitution, provides that no bill ''shall contain more than one subject, which

313 Mo.—45 .

shall be clearly expressed in the title." The one subject here relates to legal publications in cities of over 100,000, and the statute repealed relates to that. The Constitution does not require each subdivision of the subject and details germane to the general purpose of the act to be mentioned in the title. [State ex rel. Greene Co. v. Gideon, 277 Mo. 361.] When certain sections of the statute are repealed and other sections enacted in lieu thereof, we do not understand that the Constitution is violated if the new section fails to deal with *all* the matter contained in the law repealed. If there is included a different matter not in the law repealed, there might be some ground for the objection.

III. It is next claimed by relator that the act is unconstitutional because it is a special or local law; that there is no distinguishing peculiarity which furnished a proper classification. If we understood the trend of relator's argument, it is that only a general law, applying to such publications in all counties and cities, would be constitutional. If that position is sound, then the original act was unconstitutional and the principal clause in Section 10406 which relator seeks to enforce would have no validity.

Special and Local Law.

It is argued that the law defeats its own purpose because large metropolitan daily papers cannot afford to qualify under the act on account of the low maximum price fixed in the statute, and instead of being an aid to the courts in the administration of justice, it is a detriment. This was an argument which properly would have been addressed to the law-making body. The wisdom or propriety of a statute is not for our consideration. We are not to determine the propriety of the classification of cities by population in relation to legal notice or as to any other matter. When the language of the statute relates to persons or things as a class, it is a general law. In State ex rel. Daily Record Co. v. Hartmann, 299 Mo. 410, 253 S. W. 991, the matter was fully considered. Respondent presents an argument to the effect that the

price of advertising in St. Louis had grown to such heights that the General Assembly was asked by the bar of St. Louis to grant relief and the Act of 1923 was the result. This argument, like that of the relator, is quite beside the question. We find nothing in the act which violates the rule in relation to the classification of subjects. The law as a general law applies to every person or thing coming within the class designated.

IV.   Finally, it is contended that the act is unconstitutional because it interferes with the freedom of contract in fixing a rate at one dollar per square of 250 ems for the first insertion and fifty cents for each subsequent insertion. The argument is that the Act of 1923 does not permit parties to agree upon a definite rate. The act will not be given a construction which renders it unconstitutional or unreasonable, if it is susceptible of a constitutional and reasonable construction. [State ex rel. v. Railroad, 262 Mo. 720; Johnston v. Reagan, 265 Mo. 1. c. 435.]

*Freedom of Contract.*

The Act of 1923 amends Chapter 94, Revised Statutes 1919, and that chapter is devoted to public notices, notices which "in any court of record shall be *required by law or the order of any court* to be published." [Sec. 10399, R. S. 1919.] The relator admits that the provision of Section 10401 fixing rates for notices published by any public officer, on account of or in the name of the State, or for any county, is perfectly constitutional, because they are official notices required by law to be published. The notice, which the relator seeks to have published in this instance, is an order of publication required by law to be published. Relator argues that newspapers are not monopolies and are not impressed with public interest, and the rates which they charge are not rates of public service, nor monopoly rates. That has nothing to do with the subject. An order of publication is a method by which the court obtains jurisdiction of the parties to a proceeding. While the publisher is not an official of the court, the clerk, who orders it, *is.* It is required in

the absence or inability of an officer of the court, the sheriff, to obtain personal service in the usual way.

The expense of an order of publication may be taxed as cost, and the act simply fixes the rate which may be taxed as costs against the losing party. The statutes in every particular provide the fees which may be charged and taxed as costs, whether the service is performed by an officer of the court or some other. An order of publication is a notice necessary in the proper administration of justice. It is an official act which the clerk performs in carrying out the order of the court when he inserts the order of publication in a newspaper. It is as necessary in the administration of justice, as the act of a sheriff in serving a summons.

A reasonable construction of Section 10406 in the Act of 1923, one which agrees with the Constitution in relation to freedom of contract, is justified by its language. The rate fixed by that section is one which the newspapers may charge, one which the plaintiff in the case may have assessed as costs against the defendant if he succeeds. Undoubtedly the act itself permits one to procure his publication at a lower rate if he can. The plaintiff, if he so desires, may pay a higher rate than that, but he may not have assessed as costs any more than the rate fixed. Relator argues that if this rate is constitutional, then the Legislature would have a right to fix a rate for printing briefs and abstracts and other expenses incurred in that connection. If any of this may be taxed as costs against the other side, it looks as if the Legislature could establish the rate. This court has a rule fixing the rate which the successful party may have assessed against the losing party for printing an abstract. That rate may be assessed as costs against the losing party. Its constitutionality never has been questioned. That does not prevent the party who prints the abstract from paying more if he so desires.

There is no valid objection to the act on the ground that it violates the freedom of contract, for the two reasons: because it is a rate paid for a necessary service in

State ex. rel. Sekyra v. Schmoll.

the administration of justice, which may be taxed as costs, and because the statute, properly construed, does not prevent a contract for a different rate.

V. Relator complains of a provision in Section 10406 of the act which permits the judge of the court, when he deems it for the best interest of the parties, to order a publication in other newspapers than those qualifying under the provisions of the act. With that particular feature of the act we have nothing to do. If the particular part of the old law under which the relator claims he has a right to a peremptory writ, is repealed, it does not matter what alternative provisions in the new act appear, nor does it matter if this particular provision is unconstitutional. It would not invalidate the rest of the act, nor the principal clause repealing the old sections.

*Alternative Provision: Revival of Repealed Provision.*

We conclude that the Act of 1923 is constitutional and valid, and that the provision which the relator seeks to enforce has been repealed. The alternative writ is quashed. All concur, except *Graves, J.,* not sitting.