NORA UTZ and EDNA NIEWIG, Minors by their Guardian Ad Litem, BEN L. EMMONS, Appellant, v. ALVENA DORMANN, VIRGIN DOR-MANN, ANNA SPETH, FRED SPETH, ARNOLD C. HOEFNER, FRED HOEFNER, HENRY HOEFNER, BENJAMIN HOEFNER, VICTOR HOEF-NER, EDWIN HOEFNER, ANNA KARRENBROCK, MATILDA PIERCE, LAURA TURNER, EDNA HOEFNER, IRVING KARRENBROCK, HOMER KARRENBROCK, HERBERT KARRENBROCK, WEBSTER KARRENBROCK, WALDO KARRENBROCK and VIOLA KARRENBROCK, Respondents, and EVELYN DALTON and JUDITH PUNDMANN, Appellants.—39 S. W. (2d) 1053.

Court en Banc, June 30, 1931.

260

*W. R. Dalton, B. H. Dyer* and *Wm. Waye, Jr.,* for appellants.

*W. F. Bloebaum, Theodore C. Bruere* and *Allen, Moser & Marsalek* for respondents.

DAVIS, C.—Plaintiffs' petition contains three counts. The *first* count is an action to ascertain and determine title to certain described real estate. The *second* is an action in ejectment. The *third* avers that a certain deed of trust on said land is null and void, and prays that said deed of trust be declared barred by the Statute of Limitation, that the sale of said property under said deed of trust be declared of no effect, and that said real estate be partitioned and sold. The trial court awarded judgment, determining that title was in respondents, and decreed that a deed from Alvena Dormann, Anna Speth and Fred Speth, her husband, to Evelyn Dalton, dated July 20, 1923, was void and of no effect, because said deed casts a cloud upon the title of the true owners; that said deed to Evelyn Dalton be canceled, and that title be vested in respondents. The court further found that the respondents, the heirs of the purchaser at the trustee's sale, were at all times in lawful possession of the

real estate, and that neither appellants, Nora Utz, Edna Niewig and Judith Pundmann, nor defendants, Alvena Dormann, Virgil Dormann, Anna Speth, Anna Speth, administratrix of the estate of Fred Speth, deceased, nor appellant Evelyn Dalton, have any right to claim or possess said real estate. The court further found that neither appellants nor the defendants last mentioned have any right, title or interest in the real estate, or any right to partition. Plaintiffs Nora Utz and Edna Niewig and defendants Judith Pundmann and Evelyn Dalton appealed from the judgment entered.

The facts develop that in 1879 Frederick Bredenwischer owned 68.75 acres, and his wife, Elise Bredenwischer, owned 11.25 acres, which two tracts were contiguous and together comprised the west half of the southeast quarter of Section 22, Township 46 North, Range 1 East, in St. Charles County, a tract of eighty acres. On March 21, 1879, Frederick and Elise Bredenwischer executed a deed of trust on said eighty acres to one Leimbrock, trustee, to secure a promissory note of even date in the sum of $1960, payable to Henry Hoefner, which note was signed only by said Frederick. Said deed of trust was duly acknowledged and recorded. Frederick Bredenwischer died in 1885, and letters of administration were issued to Elise, his wife, on July 14, 1885, who inventoried the eighty-acre tract of land as belonging to him, together with $302.45 personalty. . Frederick left surviving him his widow and five daughters, to-wit, Alvena, who married one Dormann; Anna, who married Fred Speth; Judith, who married one Pundmann; Clara, who married one Niewig, and Lena, who died at the age of eight years, intestate, unmarried and without issue, leaving as her heirs at law her mother and four surviving sisters mentioned above. Clara Niewig died intestate later, leaving as her heirs at law her two children, Nora Utz and Edna Niewig, grandchildren of Frederick and Elise Bredenwischer, and plaintiffs herein. Elise Bredenwischer died intestate in 1922, leaving as her only heirs her daughters, Alvena Dormann, Anna Speth, Judith Pundmann, and plaintiffs. Elise, at the death of her husband, took a homestead and dower in his real estate. Subsequently she inherited an interest from her deceased daughter Lena. She continued to live on the farm until her death.

On April 30, 1923, Henry Hoefner, the *cestui que trust* in the deed of trust and the owner of the $1960 note secured by it, filed his petition, verified April 17, 1923, in the Circuit Court of St. Charles County for the appointment of a trustee in place of Leimbrock, trustee therein, deceased. On May 14, 1923, the circuit court appointed Arnold Hoefner as substitute trustee. The substituted trustee commenced publication of notice of sale under said deed of trust on June 22, 1923, and continued publishing said notice until

the last publication on July 27, 1923. The trustee sold said real estate under said notice and deed of trust on July 28, 1923, to Henry Hoefner for $3,500. Henry Hoefner died on August 1, 1923, and the land descended to his heirs, the respondents herein.

On May 16, 1895, Elise Bredenwischer executed a deed of trust and note for $700, payable one year after date, in favor of Fred Speth, on the 11.25 acres, which land was also covered by the deed of trust in favor of Henry Hoefner and to which it was subject.

There was evidence introduced which respondents assert shows that payments on said notes for $1960 and $700, respectively, were made that kept them alive and arrested the Statute of Limitation. Appellants contend that the evidence as to payments was insufficient for that purpose. Our views as to the applicability of Section 1320, infra, render it unnecessary to summarize the evidence in that regard or determine the question.

Section 1320, Revised Statutes 1919, as amended by the Laws of 1921, pages 202-203, approved March 31, 1921, reads:

"Sec. 1320. No suit, action or proceeding under power of sale to foreclose any mortgage or deed of trust, to secure any obligation to pay money or property, shall be had or maintained after such obligation has been barred by the statutes of limitation of this state; nor in any event after the lapse of twenty years from the date at which the last maturing obligation secured by the instrument sought to be foreclosed is due on the face of such instrument, unless such termination of said period falls within two years after the passage of this act, or has heretofore happened, in which event such suit, action or proceeding may be begun within two years after the passage of this act without regard to the date of the instrument or the maturity of the obligation, unless otherwise barred under the provisions of the general statutes of limitation, unless before the lapse of said twenty years the owner of the debt thereby secured or some person for him shall file an affidavit duly verified, or file an instrument in writing acknowledged as deeds are required to be acknowledged in order to entitle them to record in this state, showing the amount due and owing thereon."

I. The deed of trust, executed by Frederick and Elise Bredenwischer, and the note secured by it to Henry Hoefner, *cestui que trust* and payee, were dated March 21, 1879, due one year after date. The deed of trust, executed by Elise Bredenwischer, and the note secured by it to Fred Speth, *cestui que trust* and payee, were dated May 16, 1895, due one year after date. The deed of trust to Henry Hoefner was foreclosed by the substituted trustee at his instance, on July 28, 1923,

by virtue of a power of sale given by said deed of trust. The publication of notice of sale was commenced on June 22, 1923. Section 1320, as amended by Laws of 1921, pages 202-203, became effective on June 20, 1921, at least, for we take judicial notice that the General Assembly adjourned on March 21, 1921, at noon, and said section, as amended, became operative ninety days after the adjournment of the session at which the act was enacted. [Missouri Constitution, Art. IV, Sec. 36.] The evidence shows that publication of the notice to foreclose said deed of trust was not commenced within twenty years nor within two years after Section 1320, as amended, became operative; nor was a verified affidavit or acknowledged instrument filed. It is evident, we think, that Section 1320, as amended, means that a deed of trust may not be foreclosed in any event after a lapse of twenty years from the date the last maturing obligation secured by it is due on its face, provided that the holder of the obligation had two years from the date the statute became operative to file a suit, an action or to proceed under power of sale, and provided further that before the lapse of said twenty years the owner of the debt or some one for him may file a verified affidavit or an acknowledged instrument showing the amount due and owing thereon. The section interdicts and precludes the foreclosure of a deed of trust in any event after a lapse of twenty years, saving that the owner of the debt was granted by the statute two years in which to bring a suit or an action or proceed to foreclose under power of sale and saving that the owner or some one for him may file the requisite verified affidavit or acknowledged instrument, thus tolling the statute. Henry Hoefner had no longer time than June 20, 1923, to proceed to foreclose the deed of trust by suit, action or proceeding under power of sale. We think that a proceeding under power of sale means the commencement of the publication of the notice of sale. This seems to be a necessary step to arrest or toll the Statute of Limitation found in Section 1320, as amended.

II. Respondents say, however, that the right to foreclose the deed of trust of March 21, 1879, was not barred by Section 1320, as amended, because a proceeding was begun within two years after the date of the passage of the act by the petition of the *cestui que trust* to the circuit court praying the appointment of a substitute trustee. We do not think that the filing of said petition was tantamount to a proceeding under power of sale to foreclose the deed of trust, for the petition for the appointment and the appointment of the substitute trustee was not the commencement of the foreclosure of a deed of trust. The *ex parte* suit or petition for the appointment and the appointment of a trustee

accomplished nothing more than legally naming a trustee in lieu of the original trustee. Certainly, it is necessary for an original trustee to commence publication within the time limited before the proceeding under power of sale could be said to be had or maintained. As a substitute trustee is his *alter ego* and succeeds to his rights and powers under the deed of trust, the same reasoning applies. If a suit or action be not filed, a trustee to sell the real estate under a deed of trust is required, but the proceeding in court for the appointment of a substitute trustee is in fact no proceeding under power of sale to foreclose a deed of trust.

III. Moreover, it does not appear that the owner of the note and deed of trust, after the circuit court appointed a substitute trustee, proceeded in an orderly and continuous manner to foreclose the deed of trust. The record shows that the substitute trustee was appointed on May 14, 1923, but that he did not begin publication until June 22, 1923. The publisher's affidavit shows that the Wentzville Union was a weekly newspaper printed and published in St. Charles County, and that the notice of the foreclosure of said deed of trust was published once a week for six consecutive weeks, to-wit: on June 22 and 29, and July 6, 13, 20 and 27, 1923. It is evident that publication could have been commenced in time to toll the statute; but it is also evident that respondents did not take in an orderly and continuous manner the steps necessary to foreclose the deed of trust, even if we could say that the petition for the appointment of a substitute trustee was a proceeding. As we said in Friel v. Alewel, 318 Mo. 1, 7, 298 S. W. 762: "We are of the opinion that a 'proceeding under power of sale,' as used in the statute, means a course of action or procedure, resulting in competent, orderly and continuous steps of procedure until the power of sale has been fully exercised in accordance with the statutes appertaining thereto." If respondents are to be permitted to wait from May 14, 1923, until June 22, 1923, after the statute had run, to commence publication, there was nothing to preclude them, it appears, from executing the power of sale at any future time.

Our conclusions in the preceding paragraphs also apply to the deed of trust and note for $700 secured by it, dated May 16, 1895, due one year after date, executed by Elise Bredenwischer to Fred Speth.

IV. The record fails to show that defendant Evelyn Dalton filed a motion for a new trial, although it shows that she appealed. However, the record shows that plaintiffs and defendant Judith Pundmann, designated as plaintiff in said motion, filed a motion for a new trial. Plaintiffs and Judith Pundmann also appealed. Respondents contend that Evelyn Dalton's assignment of errors is not reviewable, because she failed to file a motion for a new trial, although, of course, they admit that the record proper is open to review, but assert that it is free from error.

Section 1453, Revised Statutes 1919, orders that a new trial be granted where the grounds are just. The trial court has the inherent power to grant a new trial, irrespective of the grounds set forth in the motion. [Stanard Milling Co. v. White Line Central Transit Co., 122 Mo. 258, 26 S. W. 704.] Section 1456, Revised Statutes 1919, reads: ''All motions for new trials and in arrest of judgment shall be made within four days after the trial, if the term shall so continue; and if not, then before the end of the term.'' While the statute declares that motion for new trials shall be made as provided therein, it does not of itself declare that courts, either trial or appellate, shall not consider matters of exception in the absence of a motion for a new trial, although we have judicially so interpreted the statute. However, notwithstanding the statute, we have always accorded trial courts the power, during term time, to set aside verdicts and judgments without the filing of a motion for a new trial. The real function of a motion for a new trial is to afford the trial court an opportunity to correct errors, if any, because we have thought that the trial court ought not to be convicted of error unless such error is brought to its attention by some legal manner or means, thus affording the trial court an opportunity to correct error, if any.

It will be noted that a motion for a new trial was filed in this cause by parties whose interests were identical with those of Evelyn Dalton. Evelyn Dalton perfected an appeal, and now complains of the identical errors that the other appellants assert occurred in the trial court. By their motion for a new trial, the other appellants competently brought to the attention of the trial court and to our attention matters of error, which we have sustained. The trial court was afforded an opportunity, by the motion for a new trial filed by the other appellants, to rectify mistakes and errors. Thus the filing of a motion for a new trial by Evelyn Dalton would have been futile. It follows that the reason for our interpretation of the statute, that a motion for a new trial must be filed in time to permit matters of exception to be reviewed by an appellate court, fails when

the record develops that the trial court was afforded an opportunity to correct the identical errors now urged. It is not our intention to annul our previous interpretation of the statute, to the effect that matters of exception cannot be reviewed in an appellate court unless a motion for a new trial is timely filed. But in the instant case, the trial court was given an opportunity to correct the errors. It thus stands that the filing of the motion for a new trial by the other appellants inured to the benefit of Evelyn Dalton.

V. As the result of our conclusions, we find that Nora Utz and Edna Niewig have an undivided one-eighth interest each in the land; that defendant Judith Pundmann has an undivided one-fourth interest in the land; and that defendant Evelyn Dalton has an undivided one-half interest in the land; and that the other defendants and the respondents herein have no right, title or interest in said land.

Consequently, the judgment is reversed and the cause remanded for further proceedings in accordance with this opinion. *Henwood* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion of DAVIS, C., in Division Two, is adopted as the opinion of Court en Banc. *Ragland, C. J.,* and *Atwood, Gantt* and *White, JJ.,* concur; *Frank, Henwood* and *Ellison, JJ.,* concur in paragraphs 1, 2, 3 and 5, and the result.