STATE OF MISSOURI at the Relation of OTTO F. KARBE and HATTIE KARBE, Relators, v. ARTHUR H. BADER, Presiding Judge of Division One of the Circuit Court for the Eighth Judicial Circuit, and EDMOND KOELN, Collector of Revenue for the City of St. Louis.—78 S. W. (2d) 835.

Court en Banc, December 22, 1934.

260

*Albert E. Hausman* for relators.

*Frank H. Haskins, Albert D. Nortoni* and *Charles J. Dolan* for respondents.

*Roy McKittrick,* Attorney General, *Harry G. Waltner, Jr.,* and *Gilbert Lamb,* Assistant Attorneys General, *amici curiae.*

*Arthur U. Simmons, amicus curiae.*

LEEDY, J.—Original proceeding in prohibition. Relators are defendants in a tax suit brought by the State, at the relation and to the use of respondent Koeln, Collector of the City of St. Louis, as plaintiff, in Division No. 1 of the Circuit Court of the City of St. Louis presided over by respondent Bader, as judge. The purpose of said suit is to enforce the lien of the State for taxes (with interest and penalties) for the years 1929, 1930, 1931 and 1932, against certain real property situated in said city, owned by relators. Relators' petition for the writ alleges that the lower court is without jurisdiction because the Fifty-seventh General Assembly repealed Sections 9952, 9953, 9954, 9955, 9956, 9957, 9958, 9960, 9962 and 9963 of the Revised Statutes 1929, providing for the enforcement of the lien of the State for taxes by suit, and substituted therefor a method of sale without judicial proceedings, upon notice by the collector for three consecutive weeks in some newspaper of general circulation published in the county in which the land, lots or tracts might be situated. [Laws 1933, pp. 425-449, passed March 24, approved April 7, 1933, and which will hereinafter be referred to as Senate Bill No. 94, or the Jones-Munger Act.] It is further alleged that respondent Koeln, collector, relies upon and predicates his aforesaid suit for taxes upon Section 9952, Revised Statutes 1929, enacted by the Fifty-seventh General Assembly, passed April 1, approved April 28, 1933, with an emergency clause (Laws 1933, pp. 465-467, which will hereinafter be referred to as House Bill No. 44.) The constitutionality of the act just mentioned is attempted to be raised by relators' petition.

Our provisional rule in prohibition was ordered, and respondents entered their appearance, waived issuance of the writ, and agreed that relators' petition be taken as and for such writ, and filed their joint return; whereupon, relators filed their motion for judgment on the pleadings. We look, therefore, to the facts stated in the return as the facts of the case (State ex rel. v. McQuillin, 262 Mo. 256, 171 S. W. 72) subject, however, to this qualification: The adversary party to the suit below (in this instance, respondent Koeln, collector) being neither a necessary or proper party to an original proceeding in prohibition (State ex rel. v. Duncan, 333 Mo. 673, 63 S. W. (2d) 135; State ex rel. v. Barton, 300 Mo. 76, 254 S. W. 85) we disregard all allegations of fact contained in the return "insofar as they pertain to his relationship to the case"—to quote his oath respecting the facts stated in the return. So, as abbreviated, the return (summarized) is as follows: It admits the capacities of the parties, and pendency of the tax suit in question; that the respondent judge has assumed jurisdiction thereof and is about to proceed "by judicial hearing, judgment and decree to the end of ascertaining and es-

tablishing the tax lien on the said real estate of relators by finding, judgment and decree of said circuit court therein, and will proceed to do so unless prohibited and forbidden so to do," etc. It admits that Senate Bill No. 94 was enacted as alleged in relators' petition, and avers "that said statutes (Senate Bill No. 94) insofar as the provision for such advertisement and sale and so forth is concerned are insufficient, impractical, arbitrary in their application and in their failure to provide a fund for compensating for the publication of proper and adequate notice, and that such statutes are void and without force for such reasons . . . and because they contravene Section 30 and also Section 20, Article II of the Constitution of Missouri."

Respondents further say that Senate Bill No. 94 which was passed without an emergency clause on March 25, 1933, and approved and signed by the Governor on April 7. 1933, and became effective July 24. 1933. and that thereafter the said General Assembly at the same session. passed another and inconsistent act (House Bill No. 44) relating to the same subject matter providing for the enforcement and foreclosure of the State's lien for delinquent taxes by suit by the collector. and. judicial proceedings in a court of competent jurisdiction, which said act was passed with an emergency clause on April 1, 1933 and approved and signed by the Governor on April 28. 1933. and is a later and inconsistent law covering the same subject matter, and, therefore, because of such inconsistency and repugnancy said act approved April 28, 1933, repeals and supersedes the provisions of the act of April 7, insofar as it provides for the enforcement of the State's lien for delinquent taxes by sales by the collector. and confers jurisdiction on the said circuit court over which respondent Bader presides, and authorizes the collector to sue therein.

I. The ultimate question to be determined is whether the circuit court has jurisdiction of the subject matter of an action brought by the State to foreclose its lien for delinquent taxes on real estate, and the determination of that question may be said to depend on:

(A) Whether House Bill No. 44. the later enactment, supersedes, repeals or supplants the earlier and apparently inconsistent enactment. Senate Bill No. 94: and

(B) If not, is Senate Bill No. 94 (the so-called Jones-Munger Act) unconstitutional and void because of the defects said to inhere in it?

These propositions will be considered in the inverse order of their statement. All references to Revised Statutes of Missouri are to the Revision of 1929. unless otherwise noted.

The method of foreclosing the State's lien for delinquent taxes, which for many years had been by suit in a court of competent jurisdiction in the county wherein the lands were situated, was radically changed by Senate Bill No. 94. It expressly repealed numerous sec-

tions of the former statute and particularly Section 9952, authorizing such suits, and substituted a scheme for foreclosure by sale by the collector at the courthouse door on the first Monday in each year, upon published notice thereof, and without resort to judicial proceedings—the general statutory plan prevailing prior to the year 1877. Section 9952, supra, might be termed the basic section of the act under which suits were authorized provides, in part, as follows: ". . . It shall be the duty of the collector to proceed to enforce the payment of the taxes charged against such tract or lot, by suit in a court of competent jurisdiction of the county where the real estate is situated, which said court shall have jurisdiction, without regard to the amount sued on, to enforce the lien of the State or such cities."

House Bill No. 44 provided in Section 1 thereof, "That section 9952 of Article 9, Chapter 59, of the Revised Statutes of Missouri, 1929, relating to delinquent and back taxes be and the same is hereby repealed, and a new section relating to the same subject matter enacted in lieu thereof to be known as Section 9952 and to read as follows:" However, an examination of the bill discloses that the sole change contemplated was in relation to tax attorneys in counties having not less than 80,000 nor more than 95,000 inhabitants, by making the prosecuting attorney in such counties the back tax attorney, and this the bill sought to accomplish through the medium of a proviso in this language; "*Provided, however*, that in all counties of this State that now have or may hereafter have a population of not less than 80,000 nor more than 95,000, according to the last decennial census of the United States, the Collector shall have no power or authority to employ such attorneys, that the Prosecuting Attorney of such counties shall be the back tax attorney, and that all fees collected as such by the Collector shall be paid into the County Treasury; and each of the Prosecuting Attorneys in such counties shall be entitled to such additional temporary clerk and deputy hire as in the judgment of the Prosecuting Attorney and the County Court may be deemed necessary, for such time and at such salary as may be fixed by the Prosecuting Attorney and the County Court." The emergency clause with which the bill was passed is as follows: "The financial condition of the counties and of the people therein, to which this act applies, and relief of the same being imperative without delay, creates an emergency in the meaning of the Constitution and this act shall be in force and effect upon its passage and approval." Under the proviso quoted, in counties of the population mentioned, 80,000 to 95,000 inhabitants, the prosecuting attorney was made delinquent tax attorney. In all other respects, the terms and provisions of Section 9952 remained intact and unchanged. Because Greene County is the only county in the State having a population between the figures mentioned, it alone would have been affected by the opera-

tion of the bill, and the legislative journals show the measure was introduced by a Representative from that county. In that connection, it is interesting to note the following language of this court in State ex rel. v. Riedel, 329 Mo. 616, 46 S. W. (2d) 131, l. c. 134, in reference to legislation designed to affect only one county or district: "It is common knowledge that, where a bill is introduced in a legislative body which after it becomes a law will affect only one county or district, such bill will not be subjected to the critical judgment of the body as a whole; if the member from the county or district to be affected desires it passed, it will be. The potential evils of that method of legislating are illimitable."

■ It is competent for us to judicially notice the history of legislation as reflected by the record thereof in the legislative journals of the State (State v. Adams, 323 Mo. 729, 19 S. W. (2d) 673; Utz v. Dormann, 328 Mo. 258, 39 S. W. (2d) 1055). Resort to which, in this instance, shows certain pertinent facts with respect to the two bills now under scrutiny. For convenience of reference, and because when placed in juxtaposition their importance and relevancy, chronologically, is more apparent, the facts relating to each are shown in parallel columns, as follows:

| HOUSE BILL NO. 44 | SENATE BILL NO. 94 |
| --- | --- |
| Introduced --------Jan. 17 (p. 62) | Introduced --------Jan. 25 (p. 103) |
| Referred to Ways & Means ------ | Referred to Ways & Means ------ |
| ------------------Jan. 20 (p. 80) | ---------------------Jan. 26 (p. 111) |
| Reported out --Feb. 23 (p. 596-7) | Reported Out (favorably) -------- |
| Committee Amendments Adopted & | ------------------Feb. 9 (p. 213) |
| Bill perfected -Feb. 27 (p. 628-9) | Perfected --------Feb. 28 (p. 416) |
| Passed House --Mar. 9 (p. 779-81) | Passed Senate ---Mar. 17 (p. 669) |
| Passed Senate --Apr. 1 (p. 962) | Passed House ----Mar. 24 (p. 948) |
| Approved by Governor (With emergency clause) -----------Apr. 28 | Approved by Governor ----Apr. 7 |

■ As above indicated, the Jones-Munger Law (Senate Bill No. 94) was finally passed March 24, 1933, and approved by the Governor on April 7, and became effective, if at all, on July 24, 1933, or ninety days after the adjournment of the Fifty-seventh General Assembly. House Bill No. 44, with what purports to be an emergency clause, was finally passed April 1, and signed and approved by the Governor on April 28. If the emergency clause be held good, and if the bill be otherwise valid, it became effective upon being signed and approved by the Governor. In this anomalous condition of things, what can be said to have been the intention of the Legislature in the premises? We think the pleadings do not sufficiently raise the constitutionality of House Bill No. 44, and even if they did, relators' "points and authorities" in their brief would not justify our examination into the question. They content themselves with the bald assertion that

"House Bill 44, passed April 1, 1933, and approved April 23, 1933. is unconstitutional." The constitutional provisions with which the act is supposed to be in conflict are not even given by article and section numbers, nor is their substance stated. This alone is sufficient reason for us to decline to inquire into the question.

It should be borne in mind that Senate Bill No. 94 did not even purport to repeal the section of the former statute relating to limitations (Sec. 9961), reading as follows: "No *action* for recovery of taxes against real estate shall be commenced, had or maintained, unless action therefor shall be commenced within five years after delinquency, excepting taxes now delinquent, on which suit may be commenced at any time within five years after this chapter shall take effect, but not thereafter." But at the Extra Session of the Fifty-seventh General Assembly, which convened October 17, 1933, the Chief Executive, on December 4, delivered a message to the House and Senate in joint session wherein it was stated, "The subjects and purposes to be considered by the Fifty-seventh General Assembly are hereby enlarged and supplemented to include the consideration of enactment of said legislation as may to the General Assembly seem proper concerning the following subjects and purposes. .. . .

"(C) An Act to repeal Section 9961 of Article 9, Chapter 59 of the Revised Statutes of Missouri, 1929, relating to limitation of actions in connection with delinquent and back taxes, and to enact a new section in lieu thereof, to be known as Section 9961, relating to limitation of sales for delinquent taxes and validity thereof."

Pursuant to that authorization, there was enacted at such Extra Session a bill known as Senate Bill No. 54, which expressly repealed Section 9961, supra, relating to limitations of *actions* for the recovery of taxes against real estate, and enacted a new section in lieu thereof, limiting the period in which "proceedings for the sale of lands and lots for delinquent taxes"—phraseology repeatedly used in the Jones-Munger Law—might be commenced; and which (omitting a proviso not here relevant) is in words and figures as follows: "No proceedings for the sale of land and lots for delinquent taxes under the provisions of Chapter 59, Revised Statutes of Missouri, 1929, relating to the collection of delinquent and back taxes and providing for foreclosure sale and redemption of land and lots therefor, shall be valid unless initial proceedings therefor, shall be commenced within five (5) years after delinquency of such taxes, and any sale held pursuant to initial proceedings commenced within such period of five years shall be deemed to have been in compliance with the provisions of said act insofar as the time at which such sales are to be had is specified therein, provided that proceedings for the sale of lands and lots on which taxes are delinquent for the year 1928 may be commenced at any time prior to December 31, 1934." Manifestly the authority

given the special session by the message referred to constituted an executive construction of the legislation in question—a construction that Senate Bill No. 94 was the applicable law—which, together with a like construction on the part of the Legislature in adopting Senate Bill No. 54, while not controlling, is entitled to consideration. [State ex rel. v. Baker, 316 Mo. 853, 293 S. W. 399; State ex rel. v. Cupples, etc., 283 Mo. 115, 223 S. W. 75.]

We deem it unnecessary to enter into an exhaustive review or discussion of the several rules of construction urged upon us by the parties and *amici curiae* who have filed numerous briefs. We think the applicable rule is, "That where two acts are passed at the same session of the Legislature, relating to the same subject matter, as here, they are *in pari materia,* and to arrive at the true legislative intent, they must be construed together. [Corry v. Ridge, 56 Mo. App. 615; State ex rel. v. Clark, 54 Mo. 216; State ex rel. v. Klein, 116 Mo. 259; St. Louis v. Howard, 119 Mo. 41.] The law does not favor repeals by implication. If by any fair interpretation all the sections of a statute can stand together, there is no repeal by implication." [Gasconade County v. Gordon, 241 Mo. 569, 145 S. W. 1160.] The opinion in which case says further:

"In Black on Interpretation of Laws, in speaking of statutes *in pari materia,* it is said: 'Especially is it the rule that different legislative enactments passed upon the same day or at the same session, and relating to the same subject, are to be read as parts of the same act.'

"To like effect is Lewis's Sutherland on Statutory Construction, vol. 2, page 845 (2 Ed.), whereat it is said: 'It is observed that in the comparison of different statutes passed at the same session or nearly at the same time this circumstance has weight; for it is usually referred to as indicating the prevalence of the same legislative purpose, as rendering it unlikely that any marked contrariety was intended.'

"It is easy to see why the rule of construction pertaining to statutes *in pari materia* applies with peculiar force to statutes passed at the same session of a legislative body. In such case we have in fact the same minds acting upon the one subject. It is not to be presumed that the same body of men would pass conflicting and incongruous acts. The presumption is, that they had in mind the whole subject under consideration; that whilst the one general subject is touched in several separate acts, yet the legislative intent was that of a harmonious whole. In such case, it is the duty of the courts to so construe all the acts in such manner that each and every part thereof may stand, if such construction can be attained, without doing violence to the language used in the several acts.

"We take it that there can be no serious question as to these

rules of construction. Under them, can these two acts (the Stamp Act and the 'General State Road Fund' Act) stand as written? If they are absolutely inconsistent and repugnant, then of course the latter prevails and the former falls. But is such the case? We think not.''

■ There was nothing in House Bill No. 44 in the nature of new legislation. Its sole object was to amend Section 9952 (the effective law at the time House Bill No. 44 was introduced) insofar as it related to back tax attorneys in counties of a designated population. It seems obvious, and we hold that the nominal reenactment of Section 9952 by House Bill No. 44 was not intended to, nor did it have the effect of impliedly repealing or otherwise disturbing the Jones-Munger Act. We think that by attaching an emergency clause to House Bill No. 44, the Legislature intended that it should be operative only until such time as Senate Bill No. 94 took effect, the latter measure not having received executive approval at the time the former was passed. But we must hold bad, as the parties tacitly concede, the emergency clause just mentioned because invalid on its face and, therefore, wholly ineffectual to make House Bill No. 44 operative upon being signed by the Governor, and so upon the happening of the latter event House Bill No. 44 became nugatory, and as if never passed. This ruling is in harmony with controlling canons of construction, and, as we believe, causes the true legislative intent to speak.

■ II. Relators make the contention that Senate Bill No. 94 is unconstitutional because violative of the provisions of Sections 20 and 30 of Article 2 of the Constitution ''insofar as it imposes an obligation upon the Collector to advertise and sell property without provision for any fund to compensate therefor.'' And further, that said statutes are void because unworkable in that the ''provisions for such advertisement and sale are insufficient, impractical, arbitrary in their application, and in their failure to provide a fund for compensating for the publication of proper and adequate notice.''

In support of these contentions, respondents say, ''That the provision made by Senate Bill No. 94, as finally adopted, for the payment of the cost for printing is unworkable, and that since publication of notice is an integral part of the whole scheme for the selling of delinquent lands, and since without notice, both to the taxpayer and to prospective buyers, such taxpayers would be deprived of their property without due process of law, if such property should be sold, it is the contention of respondents that Senate Bill No. 94 cannot be carried into effect, and is for this reason null and void.''

The particular provisions of the statute assailed are contained in Section 9952b, reading as follows: ''The expense of such printing shall be paid by the purchaser or purchasers of the lands and/or lots sold and shall not exceed the rate fixed in the county printing

contract, if any, but in no event to exceed the legal rate for the entire notice, as such legal rate is fixed by Section 13773, which cost of printing at the rate specified shall be taxed as part of the costs of the sale of any land or lot contained in such list and disposed of at such sale, and the total cost of printing such notice shall be prorated against all such lands or lots so sold or redeemed prior to any such sale.''

We think it sufficient answer to the proposition that the bill is unconstitutional because denying the landowner due process of law, to say that until the notice provided for is given, the collector has no right to sell. If there is no notice, no sale can be made; and certainly, if not sold, the landowner would not be deprived of his property without due process of law.

We understand respondents' other constitutional question to be ''That Sections 9952a, 9952b and 9952c providing for advertisement and sale of lands by the Collector impinge upon the property right, that is to say, the right of contract, . . . insofar as these sections of the statute impose an obligation upon the Collector to proceed to advertise real estate at a certain time and provide no fund for the compensation with respect to that subject-matter.''

It is said that the collector might be subjected to suit on his official bond for his failure to make publication of the notice provided, when such duty is impossible of performance because the newspapers might decline to accept the advertising under the terms imposed by the statute. In that connection respondents say: ''No doubt each party has a right to contract for himself with respect to such matters, and although it was within the power of the Legislature to regulate, it is certainly not within its power to impose a contractual obligation upon a party willy-nilly. . . . It overlooks the fact that newspapers are privately owned and privately operated, and are not subject to public control. They are not even quasi public corporations.''

It would seem that these are matters going more to what might be called the workability of the act rather than its constitutionality. Because newspaper might refuse to publish the advertisement on the terms and conditions prescribed by the statute would not render the act unconstitutional and we, therefore, rule the point against respondents.

III. The publication of the notice provided for by the statutes under discussion is not unlike the publication of sundry other public notices required by law to be given in that manner—for example, sheriff's sale under execution, orders of publication, grant of letters of administration, settlements, and a wide variety of others. An argument similar in some respects to that here advanced was made in State ex rel. v. Schmoll, 313 Mo. 693, 282 S. W. 702, wherein it was

contended that a statute fixing the rate for publication of certain legal notices was unconstitutional, as interfering with the freeedom of contract, because newspapers are not impressed with public interest, and the rates they charge are not rates of public service nor monopoly rates. The court in that case, however, sustained the act under consideration, holding the matters mentioned "had nothing to do with the subject."

·The wisdom of legislation is not a matter for our determination. "The courts cannot run a race of opinions upon points of right, reason and expediency with the law-making power." [State ex rel. v. Board of Curators, 268 Mo. 598, 188 S. W. 128.] And even though the method of fixing the amount of compensation to be paid the publisher, or the time and manner thereof. may not be altogether desirable, or the most expedient plan, it does not follow that for such reason the law is unworkable and void. The statute says *"the expense of such printing shall be paid by the purchaser or purchasers* of the lands and/or lots sold . . . which shall be taxed as a part of the costs of the sale of any land or lot contained in such list and disposed of at such sale." So there is nothing in the argument that lots might not bring the amount of the costs. Under the statute the purchaser is liable for the expense of printing, regardless of what his bid may have been, which expense is to be "prorated against all such lands or lots so sold."

For the reasons above noted, the preliminary rule in prohibition is made absolute.

All concur, except *Gantt, J.*, who concurs in result only.