THE STATE v. MORRIS FRIEDMAN, Appellant.

Division Two, February 26, 1926.

1. **ROBBERY: Identification.** Positive identification of the defendant and his accomplice as the persons who robbed the witness, by testimony which bears the impress of truth, authorizes a submission of the case to the jury.

2. ————: **Concerted Act of Three Persons: Instruction.** Where two or more persons act in concert in the commission of an unlawful act, the act of one is the act of all. Where defendant and two others, acting in concert, held up the driver of an automobile on a public highway, and while one of the two held a revolver on him, defendant, with a revolver in hand, went to one side of the car, and while the driver was thus menaced the other took from him forty or fifty dollars, all are guilty of highway robbery, and an instruction which tells the jury that if they believe defendant made the assault and took the property from the driver, in his presence and against his will, by force and violence, they should find him guilty, is correct. Even if defendant did not personally take the money from the person of the driver, he was equally guilty with the man who did, since he participated in the common crime.

3. ————: **Larceny: No Instruction Required.** Where the facts show highway robbery an instruction on grand larceny is not required. Where defendant and two companions, acting in concert, ran their automobile across a public highway in front of another driven by

State v. Friedman.

the prosecuting witness, and the three then approached the driver with drawn revolvers, and while his hands were raised in compliance with the demand of one of the companions, his money and his watch were taken from him and he was ordered to trot down the road, and one of the companions took the driver's automobile and defendant and the other jumped into their car and all left the scene of the crime, an instruction on grand larceny was not required.

4. ————: Instruction: Taken and Carried Away. In highway robbery, the indictment need not allege, and the instructions need not require, that the property of which the person was robbed was "taken and carried away," nor is it necessary that either word appear in the instructions.

Criminal Law, 16 C. J., Section 115, p. 128, n. 66; Section 1561, p. 760, n. 96; Section 2290, p. 929, n. 36; Section 2297, p. 934, n. 58; Section 2370, p. 972, n. 75; 17 C. J., Section 3596, p. 269, n. 8 New; Section 3597, p. 270, n. 17.  Robbery, 34 Cyc., p. 1810, n. 90.

Appeal from Ray Circuit Court.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*Julius ·C. Shapiro* for appellant; *Bert S. Kimbrell* of counsel.

(1)  The court erred in overruling the demurrer and request for a peremptory instruction, both at the close of the State's case, and at the close of the entire case, because there was no substantial evidence of defendant's guilt.  State v. Donnington, 246 Mo. 343; State v. Goodale, 210 Mo. 290; State v. Gordon, 199 Mo. 561; State v. Hickam, 95 Mo. 322.  (2)  The court erred in giving to the jury Instruction Three for the reason there was no evidence upon which to support it.  State v. Johnson, 111 Mo. 578; State v. Massey, 274 Mo. 590.  (3)  The court further erred in giving instructions three and four, for the reason that said instructions failed and neglected to properly instruct the jury upon all of the law in the case as applicable to the issues as presented under the record, that is to say, as to the question of larceny in the cause.

State v. Conway, 241 Mo. 271; State v. Burrell, 298 Mo. 672; State v. Gurnee, 274 S. W. 58; State v. Weinhardt, 253 Mo. 629; State v. Parker, 262 Mo. 169; State v. Lasson, 292 Mo. 155. (4) The court further erred in giving instructions three and four, in that said instructions failed to include all necessary elements of asportation for the proper disposition of the issues presented under the evidence, that is to say, said instructions failed to require a finding that the property described therein was "taken and carried away." State v. Keeland, 90 Mo. 337; State v. Johnson, 111 Mo. 578; State v. Smith, 190 Mo. 706; State v. Boatright, 182 Mo. 44; State v. Koplan, 167 Mo. 298; State v. Taylor, 136 Mo. 73; State v. Higgins, 88 Mo. 354; 23 R. C. L. sec. 5, p. 1141; 34 Cyc. 1802; 2 Bishop's New Crim. Proc. (4 Ed.) p. 257.

*Robert W. Otto,* Attorney-General, and *Wm. L. Vandeventer,* Assistant Attorney-General, for respondent.

(1) Where there is sufficient evidence to submit the case to the jury, the Supreme Court will not interfere with conviction as against weight of the evidence. State v. Gurnee, 274 S. W. 61; State v. Walker, 227 S. W. 831; State v. Lee, 266 S. W. 1022; State v. Houston, 263 S. W. 219; State v. Perry, 267 S. W. 828. (2) If two or more persons agree together to commit some crime and enter upon the commission thereof, the act of one of them is the act of all and they are equally guilty. State v. Plotner, 283 Mo. 83; State v. Jackson, 253 S. W. 736; State v. Vaughn, 200 Mo. 1; State v. Johnson, 111 Mo. 584; Sec. 3687, R. S. 1919. (3) Instruction 4 is almost exactly in the form recommended by Judge Faris in State v. Massey, 274 Mo. 590. (4) The facts of this case do not justify an instruction on grand larceny. Where the facts do not show robbery, but larceny, then an instruction should be given. The cases cited by appellant are not in point. (5) It was not necessary in robbery to instruct that the jury must find the property was carried away. Crutcher

v. State, 19 Ala. App. 529; Terry v. State, 13 Ind. 70; Thompson v. State, 35 Tex. Cr. 511; State v. Smith, 40 Wash. 615.

WALKER, P. J.—Morris Friedman, Pete Carolla and Sam Strada are charged by information in the Circuit Court of Clay County with robbery in the first degree. A change of venue was awarded to Ray County, a severance granted, and on a trial to a jury the defendant was found guilty and sentenced to ten years' imprisonment in the penitentiary. From this judgment he appeals.

About 11:30 o'clock, p. m., Cecil Blaine was driving alone in an automobile from Orrick, in Ray County, to Liberty in Clay County. About a half hour later while *en route* and about two miles from Missouri City, a large automobile, in which there were three or four men, approached rapidly from the rear and ran their car across the road in front of and about ten or fifteen feet from Blaine's car. These men alighted from the car and Carolla held a flash light and a revolver on Blaine and ordered him to "stick up his hands." Friedman, with a revolver in his hand, went to the other side of Blaine's car and Strada stood in front of it. While Blaine was thus menaced these men took from him fifty or sixty dollars in money and his watch. They then ordered him out of his car and told him to "trot down the road." Friedman and Carolla returned to their car and Strada got into Blaine's car and they all drove away. The location of this crime was in Clay County. Blaine ran to the house of a man named Shepherd near at hand and called up the marshal of Liberty, giving him a description of the robbers. He then walked to Liberty some nine miles distant. The robbery occurred on Saturday night. On Monday morning Blaine reported the robbery to the chief of police at Kansas City, some twenty-three or twenty-four miles away, and gave him a description of the robbers. On Tuesday morning Blaine, having been notified that three men had been arrested in Kansas City and were being held for

investigation, whether from the descriptions furnished by him or on suspicion the record does not disclose; as requested by the police, he went to the jail in that city and identified them as the men who had robbed him. His identification was unequivocal.

There was evidence for the defense that Carolla and Friedman had been arrested by the police of Kansas City during the afternoon of May 3, 1924, and were held for investigation, Carolla being released at 8:30 P. M. and Friedman at 10:50 P. M. What was shown to be a police record designating the time of Friedman's release was introduced in evidence; the officer, by whom it was sought to verify these entries, said he did not know who made it and he did not personally remember when the releases occurred; that the entries were supposed to be correct. Friedman denied his complicity in the robbery and said he was arrested by the police May 3, 1924, and was in jail until about eleven o'clock that night, when he was released on bond requiring him to report at police headquarters. A clerk in a drug store said he saw Friedman, with whom he was acquainted, at the drug store "right about eleven o'clock" on the night of May 3, 1924; that he did not at the time know Friedman's name, but knew him casually. Cross-examination of the officer who testified as to the time entry purporting to show when the defendant was released revealed that this entry and that of the time of Carolla's release were the only instances he had known where the time of releases were entered on the book where these appeared and that this record in which these entries appear was accessible to others than the police. It was also shown that the defendant, while in jail at Liberty awaiting trial for this offense, attempted to escape and upon being discovered in the act was handcuffed and thereafter escaped from the jail, but was apprehended and brought back before he had gotten outside of the limits of Liberty.

I.    The identification of the defendant by the prosecuting witness as one of the men who robbed him bears

the impress of truth when subjected to the tests applied to determine the verity of human testimony.

Identification.

The prosecuting witness, the morning after the robbery, sent the chief of police of Kansas City what afterwards was shown to be correct descriptions of the defendant and his associates. The succeeding day, upon being requested by the chief of police to look over those confined in the city jail, he went to that city and being afforded an opportunity to "look over" the inmates he readily selected the defendant and his associates from those submitted to his inspection. His conclusion in this regard, unaffected as it is by any indication of ulterior influences and based as it must have been upon the impression made upon his mind at the time the crime was committed, as to the personnel of the defendant, was not only ample to submit the question to the jury of the presence of the latter at the place of the crime, but carried with it a well-founded conviction of its correctness. We have uniformily held that where testimony bears the impress of truth we will not interfere with a conviction as against the weight of the evidence. The trial court did not err, therefore, in overruling the defendant's peremptory instruction in the nature of a demurrer to the evidence.

II. It is contended that Instruction Three, given by the court, is erroneous. It told the jury that if they believed that the defendant made the assault and took the property mentioned in the information from

Concerted
Unlawful
Act.

the said Cecil Blaine, in his presence and against his will, by force and violence, etc., they should find the defendant, Morris Friedman, guilty and assess his punishment, etc. In support of defendant's contention, State v. Johnson, 111 Mo. 578, and State v. Massey, 204 S. W. (Mo.) 541, are cited.

In State v. Johnson, the latter and Maria Raven, defendants, and wife of the complaining witness, Lee, who was not living with her husband, went to the house of Lee for the ostensible purpose of getting some clothes for Lee's

child. While there they got into an altercation and defendant Johnson knocked Lee down, forced him into another room and held him, while Maria Raven opened a trunk and took therefrom three $20 gold coins, which she carried away. In that case there was no evidence of any concert of action or conspiracy, and it was not shown in any way that defendant Johnson took the money or had anything to do with the taking of it. This court held that the question of defendant having taken the money should not have been submitted to the jury, because no concert of action was shown.

In State v. Massey, the court says that: "If there were no proof, either that defendant assaulted the prosecuting witness or that he took from the latter's person any of the property of which said witness was robbed, then this contention must be sustained and the case reversed"—citing State v. Johnson, 111 Mo. 578, 20 S. W. 302. The court held, however, that this instruction was not error because it was not shown that defendant did not make the assault and it was shown by one witness that he assisted in taking the property.

In the instant case, it was shown that the defendant and his associates were together; that they were in the car when it ran ahead of the complaining witness and blocked his progress on the highway; that the three got out of the car, one approaching on the left, another on the right, both with revolvers and the third coming up directly in front of the car. Carolla and Friedman had the revolvers and both revolvers were pointed at the prosecuting witness and Carolla demanded that he hold up his hands and while the revolvers were pointed at him, Carolla relieved him of his valuables.

No further proof of concert of action is required; and it was not necessary for Friedman to have personally taken any of the property from the person of the prosecuting witness to render him guilty of highway robbery. Where two or more persons act in concert in the commission of an unlawful act, the act of one is the act of all, and when

Carolla relieved the prosecuting witness of his valuables, his act was the act of Friedman, who was standing on the right of the car, with a revolver drawn on the prosecuting witness.

In State v. Johnson, supra, p. 584, relied on by defendant, the court used the following language: "Instructions should be given in each case in view of the issues to be determined, and the evidence introduced to prove or disprove them. An instruction, without evidence to support it, is erroneous, and should not be given. There is no evidence whatever in this case tending to prove that defendant personally took or converted the money of the prosecutor Lee. If defendant was guilty at all it was by reason of a conspiracy between himself and Maria Raven and the concerted action of the two. In such case it made no difference what part each of them took, whether actively committing the acts or aiding and abetting the other in their commission; each would be guilty as principals, since all distinctions between principals of the first and second degree and accessories before the fact have been abolished. [R. S. 1889, sec. 3944 (Now Sec. 3987, R. S. 1919); State v. Orrick, 106 Mo. 119, and cases cited.] The second instruction then was erroneous in submitting to the jury the issue whether defendant took and converted the money, there being no evidence to support it. This instruction was also erroneous in authorizing a verdict against defendant without proof of a conspiracy or a concerted actin between himself and his codefendant who took the gold coins."

The distinction between the Johnson case and that at bar is that in the former there was an absence of such concert of action as to constitute a conspiracy, while in the latter there was such an active participation in the robbery by all of the parties as to show a conspiracy or a concert of action in the commission of the crime and to render the defendant a principal.

III.   Defendant insists that the court should have instructed on grand larceny, and he cites in support of this contention three cases.   The first is State v. Lasson, 238 S. W. (Mo.) 101.   In that case, the facts are entirely different from those at bar.   The complaining witness had stepped from her automobile when two men approached. One of them, named Thompson, ordered her to give him her hand-bag.   He grabbed at the bag and she tried to hold it.   Thompson then took hold of the handle and wrenched the bag from her arm with force.   As he did so, he dropped it and the defendant Lasson grabbed the bag from the ground and ran behind the car.   The complaining witness identified Thompson as the man who grabbed her bag, but could not identify Lasson as the man who ran away with it.   The companion of the complaining witness identified the man who ran way with the bag, but could not identify the man who grabbed it.   In discussing the case, the court said:

"It appears from the record that at the conclusion of the testimony, counsel for defendant requested the court to instruct the jury on grand larceny, and the court refused to so instruct.   As heretofore stated, there was substantial testimony before the jury which warranted the latter in finding defendant guilty of robbery in the first degree.   On the other hand, if the jurors believed from the evidence that defendant was not acting in concert with Thompson, but solely on his own account, without any previous arrangement or understanding with Thompson, he was entitled to have the jury told that he was guilty of grand larceny, and not robbery, if he grabbed and fled with the money in controversy, as heretofore shown. We are of the opinion that reversible error was committed by the court in refusing to instruct the jury, as requested by defendant, on grand larceny."

The second case cited by defendant is State v. Parker, 262 Mo. 169.   No violence was used, nor was there any putting of the complaining witness in fear of some immediate injury to his person.   The defendant there mere-

ly put his hand in the pocket of the complaining witness and extracted his money, while the witness was engaged in conversation with another man.    This court held that under these circumstances, the trial court should have sustained a demurrer to the evidence as to robbery, because of the absence of the two elements, violence and fear of immediate personal injury, and should have submitted the question of larceny to the jury.

The third case is that of State v. Weinhardt, 253 Mo. 629, in which this court held that, inasmuch as the defendant's evidence showed petit larceny, the court should have instructed on that branch of the case.    In that case, however, the defense was that he was guilty of petit larceny, and not of highway robbery.

In the present case, the defendant and his companions approached the complaining witness with drawn revolvers.    Both revolvers were drawn on him, and while his hands were raised in compliance with the demand of one of the companions of the defendant, his money and his watch were taken from him and he was ordered to "trot down the road."    Strada then took the witness's automobile and Friedman and Carolla jumped into their car and all left the scene of the crime.    Defendant's defense was an alibi.    Under this evidence the crime was made out as highway robbery and upon that the court correctly instructed.

It is also argued that the instruction given to the jury should have said that the property was taken and carried away.    An instruction did say that if the jury found that defendant made an assault upon Cecil Blaine and "took" one gold watch, etc., and if said property "so taken" was of any value whatever, they should find him guilty, etc. The instruction upon the theory of aiding and abetting contained the same provisions.

No case is cited in which it has been held that in an instruction for highway robbery, the court should require the jury to find that the property was carried away.    No such case can be found; but in several cases it has been
313 Mo. Sup.—7.

held that the allegation contended for by defendant need not be in an indictment for highway robbery. If it need not be alleged, it need not be proved, and if it need not be proved that the property was carried away, then it is not necessary for the court to tell the jury that they must find that it was carried away. In the cases cited by defendant the court lays down the general provision that robbery is an aggravated larceny, but there is no decision that holds that an instruction in highway robbery should allege that the property was taken and carried away.

Numerous citations are made of the improper admission and exclusion of evidence, criticizing the court's manner of ruling and his comments during the trial, but in none of these does the record, under a reasonable construction, disclose that these matters were of such a nature as to prejudice the substantial rights of the defendant. While there is a conflict in the testimony of the witnesses, and some evidence which might have raised a doubt in the minds of the jury as to the presence of the defendant at the place of the crime, yet after hearing all of the evidence, seeing the witnesses, observing their demeanor upon the stand, and taking into consideration all the testimony offered by the State and the defense, the jury decided that the defendant was guilty; thus finding that there was substantial evidence upon which to base their verdict, and no error having been committed by the court in the trial, the judgment is affirmed. All concur.