STATE OF MISSOURI, Respondent, v. ORIS MASSEY, Appellant.—No. 40964.—219 S. W. (2d) 326.

Division Two, March 14, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, April 11, 1949.

*Emery W. Allison, Theodore G. Scott* and *Claude T. Wood* for appellant.

1110

*J. E. Taylor,* Attorney General, and *David Donnelly,* Assistant Attorney General, for respondent.

[327] BOHLING, C.—Oris. Massey, hereinafter referred to as defendant, and Hayward Fletcher were charged with the first degree robbery of Sam Hickman with a dangerous and deadly weapon. After a severance, Oris Massey was put upon trial. He appeals from a judgment imposing a sentence of fifteen years' imprisonment. He presents issues involving the jurisdiction of the court, of the trial judge, the submissibility of the State's case, the propriety of the opening statement, certain evidence, instructions, and argument.

Defendant contends the circuit court did not have jurisdiction to try the case in September, 1947, because the writ of prohibition issued in State ex rel. Allison v. Barton, 355 Mo. 690, 197 S. W. 2d 667, vested exclusive jurisdiction in the supreme court. E. W. Allison, an attorney for defendant and others awaiting trial in the Phelps county circuit court, was a member of the Missouri State Senate and sought a continuance of said cases under § 96, Laws 1943, p. 383; Mo. R. S. A., § 847.96. Upon the court setting the cases for trial on May 2, 1946, he procured a provisional rule in prohibition against William E. Barton, the judge of said court. Our provisional rule commanded said Judge to show cause, if any, by May 31, 1946, "why a writ of prohibition should not issue, as prayed, prohibiting you from enforcing the trial of" this and the other cases, which rule also ordered said Judge "in the meantime, to take no further steps in said cause until the further order of this court." Our provisional rule in prohibition was made absolute on November 11, 1946.

[328] Construing the petition in the prohibition proceeding, its prayer and allegations, and the provisions of our rule in prohibition, quoted supra, the scope of its purposes was to prohibit a trial on May 2, 1946, or, giving it the broadest possible construction, at any other time not authorized by said § 96. State ex rel. Allison v. Barton, supra, first sentence.

Said § 96 provides that a continuance may be had by an attorney who is a member of and in attendance upon the General Assembly, and no trial is to be had until an adjournment or recess of the General Assembly for twenty days or more, nor for ten days thereafter. Judicial notice is taken of records of the General Assembly. Utz v. Dorman, 328 Mo. 258, 39 S. W. 2d 1053, 1055[1]; State ex rel. Snip v. Thatch, 355 Mo. 75, 195 S. W. 2d 106, 107[1]. The Sixty-third General Assembly adjourned December 12, 1946. (Senate Journal, Vol. IV, 63rd General Assembly, 4243, 4241, 4232.) The Sixty-fourth General Assembly adjourned on July 14, 1947, until January 7, 1948. (Senate Journal, Vol. I, 64th General Assembly, 1294, 1119, 1172.) A trial of defendant in September, 1947, therefore, was proper, being within the provisions of

said § 96, the petition and its prayer for prohibition and our rule in prohibition. Cases holding void attempted action by the respondent judge during the pendency of the prohibition proceedings are not controlling. For instance: State ex rel. v. Mulloy, 330 Mo. 1084, 52 S. W. 2d 402.

This case was tried in the circuit court of Phelps county, Missouri, of the nineteenth judicial circuit, by the Honorable Tom R. Moore, judge of the thirty-first judicial circuit of the State of Missouri. "The supreme court may make temporary transfers of judicial personnel from one court to another as the administration of justice requires, and may establish rules with respect thereto." Mo. Const. 1945, Art. V, § 6, Laws 1945, p. 30. Defendant's motion for new trial claimed § 6 is self-enforcing and renders unconstitutional any statute purporting to authorize a regular judge to call in the judge of another circuit to try a case, whereas his brief here recognizes that § 15 of Art. V of said constitution, reading: "Any circuit judge may sit in any other circuit at the request of the judge thereof," and statutory enactments applicable thereto (§§ 4040, 4037, R. S. 1939, Mo. R. S. A.), govern the instant procedure. The Honorable Claude E. Curtis, regular judge of the nineteenth judicial circuit, having been counsel for the State, properly disqualified himself and requested the judge of another circuit to try the cause. State v. Gillham, 174 Mo. 671, 676, 74 S. W. 859, 861; State v. Hudspeth, 159 Mo. 178, 209 (XV), 60 S. W. 136, 144 (15). It is argued in defendant's brief that Judge Moore had no jurisdiction because the record does not show that a copy of the request to Judge Moore was sent to the Chief Justice of the supreme court as provided by Rule 11.03 of this court. In the absence of a showing to the contrary a matter of this nature is well within the allowable presumption of right action on the part of courts. Consult State v. Spano, 320 Mo. 280, 6 S. W. 2d 849, 852[7]; State v. Huett, 340 Mo. 934, 104 S. W. 2d 252, 257[2, 3, 6]; State v. Bockman, 348 Mo. 656, 154 S. W. 2d 781, 782[1]. We think the mere forwarding of such a request is not a jurisdictional matter. The point is disallowed.

Sam Hickman and his wife lived on a farm in Laclede county, at Competition, Missouri. Mrs. Hickman was an invalid and for two or three years someone would stay with her at night. Mr. and Mrs. Tom Brackett was there for that purpose the night of January 9, 1946. Mr. Brackett was Mrs. Hickman's brother. Mr. Hickman was about 71, and Mr. Brackett was about 66 years of age. They had finished the evening meal and were in the living room. About 6:10 p.m. someone called "hello" from the south side of the house. This person was directed to the west door of the house where he informed Hickman he was having car trouble and wanted a lantern. Hickman lighted a lantern and handed it to the man, whom he recognized as Oris Massey, the defendant. Three to five minutes later, defendant

called "hello" again and, upon inquiry, stated he was in the ditch and asked Hickman if he would [329] help push the car. Hickman and Brackett accompanied defendant to the automobile, a 1933 Ford.

When they arrived there someone was looking under the hood of the automobile and the lantern was by the right front wheel. Hickman picked up the lantern and started around to help when the man looking under the hood came out like "lightning" and hit Hickman in the head, knocking him out. Brackett, a few feet away, started to aid Hickman, but defendant hit Brackett with a pistol between the eyes and knocked him into the roadside ditch. Defendant then pointed the gun at Brackett and said: "I have got a notion to blow your damned brains out." "If you move, I will." Brackett kept quiet. Brackett, his body above the bank of the ditch, could see out, and the other man, identified as Hayward Fletcher, was beating on Hickman's head with a rock about five to six inches long and three inches wide. Defendant said: "Beat his damned head off." Then defendant made Brackett lie down. Brackett could still see over the bank, but the robbers were about through. They soon got in the car and drove off, leaving Hickman lying in the road. Hickman testified he had $560—twenty-five $20 bills and six $10 bills—in the breast pocket of his overalls. When Hickman regained his senses, he was lying on the ground, someone had his knee across his neck, choking him, and was fumbling with his overalls where he had his money. He testified his money was taken.

Brackett assisted Hickman to the house, and in a few minutes both men were taken to the Wallace Memorial hospital in Lebanon. Hickman's face and head were badly beaten ("almost into a jelly" according to the doctor); his face was swollen; his tongue was swollen and hanging out of his mouth; his lower jaw was fractured on both sides of his face. He could not talk. Brackett carries a scar from the pistol blow.

Hickman and Brackett identified defendant and detailed his participation in the robbery. The State made a submissible case. There was considerable corroborating evidence. For instance: Defendant and Fletcher were arrested about 9:00 p. m. in Lebanon, which is about twenty miles from Competition, and were taken to the police car where they were frisked by the officers for weapons. As the police car drove away bystanders noticed some currency being blown around on the sidewalk and street. They picked up $240—eleven $20 bills and two $10 bills.

The assertion of error in permitting "Tom Brackett" to testify that defendant was an outlaw and witness was afraid of him must be overruled as Brackett did not so testify. However, the substance of this complaint is involved in other assignments and we consider them together. A proper perspective of the issues calls for a review of certain trial proceedings. It was not until after arrival at the

hospital in Lebanon, about 8:30 to 9:00 p. m., that Brackett named the robbers to the officers.

Defendant's defense was an alibi and his counsel earnestly endeavored to break down the identification of defendant by Hickman and Brackett, who testified they had known defendant for a number of years. While Hickman, the first witness for the State, was on the stand, the court sustained defendant's objection to evidence that Mrs. Brackett told her husband not to go out there; that it was Massey, defendant, at the door, and their children were at home by themselves. Defendant's cross-examination of the State's witnesses went into great detail. After going over the first occurrence at the house and how long and how well Hickman had known defendant and whether he had named one Prock as the robber (denied by Hick-.man), the cross-examination developed that the three men walked in silence from the house to the car and counsel asked Hickman whether certain specified conversation passed between Massey and him, on the theory similar conversation would be indulged in by men known to each other; and in one instance Hickman answered: "No, he was. an outlaw, I was afraid of him." The cross-examination continued. along the same lines without objection or request of any nature. Then on redirect examination and over objection the court permitted Hickman to repeat the quoted statement on **[330]** the ground defendant's cross-examination had opened the matter. Defendant's counsel recognized this ruling as correct for, upon the court stating the reason, he replied "Very well." The court, however, stopped the State from further developing the matter.

On cross-examination Mrs. Brackett was asked whether she and others in the house made certain statements identifying defendant when he came to the house and also after the offense had been committed. Then on redirect examination the court permitted her to testify that she told her husband that Oris Massey was out there and for "him to sit back down," all because defendant had gone into the conversations on cross-examination; but limited the scope of the redirect examintion to the scope of the cross-examination. The cross-.examination of witness Brackett also developed that when he started to get up, Mrs. Brackett said: You sit down. Don't you go out. That is Oris Massey.

The court was protecting defendant's rights. Under the authorities defendant may not successfully urge error in the admission of this testimony as he first brought that line of evidence before the jury. State v. Hamilton, 340 Mo. 768, 102 S. W. 2d 642, 645[5]; State v. Long, 336 Mo. 630, 80 S. W. 2d 154, 160[7]; State v. Spencer, 355 Mo. 65, 195 S. W. 2d 99, 103[7, 9]; State v. Shellman (Mo.), 192 S. W. 435, 436[5, 6].

In harmony with the trial theory defendant's counsel urged in the closing argument that Hickman's and Brackett's identifications

of defendant were the result of suggestions on the part of the officers and their influence over the witnesses (characterizing Hickman as "this weakly old man") and were not bona fide identifications; that the officers were trying to "pin" the crime on defendant without proper effort to ascertain and convict the real offenders, and, that if a verdict of guilty were returned, the officers "could lie down and sleep and say that 'our skirts have been cleared,'" et cetera.

The closing argument for the State was in direct answer to this argument, which was the defense stressed in argument for defendant. The special prosecutor stated in answer that if defendant were convicted good people in the county could "lie down and sleep"; that defendant had instructed his companion to "beat his [Hickman's] damned head off"; that the robbers thought none would have the courage to identify them in court; that Hickman and Brackett in identifying the robbers had rendered a service to law enforcement in this state; that Brackett had not gone around shouting Oris Massey did it; that: "No. People with barns full of hay and stock out in the field; people with little children unprotected in their home; they don't go around saying out loud 'Oris Massey did that.' You take the sheriff off into a room, you shut the door and quietly there in secret say to the law enforcement agents—." Here the sole objection to the argument was interposed: "That is improper argument and we are objecting to it, because there is no testimony on which to base that." The objection was overruled on the ground there was evidence on which to base the argument.

Several grounds exist for overruling defendant's contention. Defendant's cross-examination elicited the evidence upon which to base the argument. The last sentence, the sentence where the objection was interposed, was supported by direct testimony. The evidence showed the officers had been called to the hospital and, with others, were around Hickman's bed, and defendant's cross-examination of Sheriff Simmons of Laclede county brought out the fact that Brackett took Simmons into a room in the hospital and there told him to arrest Fletcher and defendant. The other statements were inferences from other testimony also first brought into the case by defendant. The objection was properly overruled. State v. Hawley (Mo.), 51 S. W. (2d) 77, 78[6]. A general objection is insufficient if there be evidence upon which to base an argument. State v. McKeever, 339 Mo. 1066, 101 S. W. 2d 22, 32[29]; State v. Lucas, 316 Mo. 904, 915, 292 S. W. 714; 293 S. W. 1051[1]. The argument was invited. It was in answer to prior argument by defendant's counsel. State v. Reagan (Mo.), 108 S. W. 2d 391, 397[19]; State v. Shilkett, 356 Mo. 1081, [331] 204 S. W. 2d 920, 926[14, 15]; State v. Londe, 345 Mo. 185, 132 S. W. 2d 501, 506[15].

The foregoing disposes of the complaint against the argument stressed by defendant. Two assignments in defendant's brief claim,

although no objection was interposed below, legitimate argument was transcended to such an extent as to deprive defendant of a fair trial and of his liberty without due process of law. We have examined the cases stressed by defendant and find objections made to the prejudicial argument: State v. Tiedt, 357 Mo. 115, 206 S. W. 2d 524, 528[5, 6]; State v. Richardson, 349 Mo. 1103, 1114, 163 S. W. 2d 956, 962; State v. Bobbst, 131 Mo. 328, 338, 32 S. W. 1149, 1151; State v. Fischer, 124 Mo. 460, 464, 27 S. W. 1109, 1110; State v. Jackson, 336 Mo. 1069, 1080, 83 S. W. 2d 87, 94. We have read the arguments of record and there is this further distinction: In the instant case the State's argument was based upon evidence of record and was in answer to argument advanced on behalf of defendant. Due process of law is not involved where the suggestions of counsel for defendant apparently provoke statements by counsel for the State. Buchalter v. New York, 319 U. S. 427, 431, 87 L. Ed. 1492, 63 S. Ct. 1129. The instant record shows the court protecting defendant's rights. Proper objections were being sustained. In these circumstances and with defendant remaining silent and taking his chances with the jury there should be a strong showing to convict the trial court of reversible error on an issue not timely presented below. It must have occurred to counsel, as it has to us, that the State was answering the argument on behalf of defendant. Defendant was represented by able counsel. They were defending a hard case. The result of fifteen years' imprisonment commends their efforts. §4453, R. S. 1939, Mo. R. S. A. We think defendant has not established reversible error. State v. Harmon, 317 Mo. 354, 360(VII), 296 S. W. 397, 400[11, 12]; State v. Hawley (Mo.), 51 S. W. 2d 77, 78[6].

Defendant's complaint respecting the following is not well taken. Sheriff E. E. Simmons had custody of an envelope containing the $240 in $20 and $10 bills found on the sidewalk at the time of the arrest. This envelope, defendant consenting, was passed to members of the jury to observe its thickness. A pawn ticket was discovered in the envelope after it was handed back and it was developed without objection that the pawn ticket called for a .32 Colt automatic pistol. Cross-examination brought out that the pawn ticket was the property of defendant. Then the State asked whether defendant had a permit to have the pistol in his possession. The court, upon objection, stopped the inquiry, instructed the jury not to consider the question, but refused to declare a mistrial. The court stated that it had observed the jurors; that they felt the thickness of the package but no juror had inspected its contents, and at defendant's suggestion again directed the jury not to consider the occurrence. The situation is much like that in United States v. Ginsberg, 96 F. 2d 882, 884[4-6]. See State v. Smith, 355 Mo. 59, 194 S. W. 2d 905, 907[9]; State v. Crofton, 271 Mo. 507, 197 S. W. 136, 137[1]; 23 C. J. S. 493, n 60 et seq.

1120

■ Defendant says the State's main instruction should have required findings that Hayward Fletcher made the assault and committed the robbery upon Hickman as charged, and further that defendant was present aiding, abetting and encouraging such actions; but that the mere presence of defendant would not constitute him a participant in the robbery if only a spectator and innocent of any wrongful intent; citing State v. Johnson, 111 Mo. 578, 584, 20 S. W. 302, 304; State v. Massey, 274 Mo. 578, 589(IV), 204 S. W. 541, 544[5]; and State v. Friedman, 313 Mo. 88, 93(II), 280 S. W. 1023, 1024(II). Defendant does not direct us to any evidence that he was a mere spectator or bystander. We have heretofore set out the evidence. It shows defendant to be a principal in the first degree—an actual participant. Defendant's cases do not disclose error under the instant facts. The law holds all who are present at the commission of an offense and participating therein, if they are confederates and engaged in a common design of which the [332] crime charged is a part, as principals; and in such circumstances the act of one is the act of all. We think the instructions, read together, sufficiently covered the instant case. The distinction is brought out in State v. Friedman, supra. Consult Green v. State, 13 Mo. *382; State v. Nelson, 98 Mo. 414, 417(I), 11 S. W. 997(I); and see § 4839, R. S. 1939, Mo. R. S. A.

■ There was no abuse of discretion in denying a continuance. Defendant's brief bases error upon the absence of witness Ray Jones, a subpoenae (returned not found) having been issued September 6, 1947, and the fact that he would testify, if present, that he was with Fletcher and defendant within the city of Lebanon for thirty minutes between 6:00 and 6:30 p. m., January 9, 1946. The information was filed February 11, 1946. The trial commenced September 10, 1947. Defendant had eight witnesses for his alibi and, as we read the record, at least four of them covered the time Ray Jones was expected to account for defendant's whereabouts, as well as time in addition thereto. Section 4043, R. S. 1939, Mo. R. S. A.; State v. Naylor, 328 Mo. 335, 40 S. W. 2d 1079, 1082[2-5]; State v. Kimbrough, 350 Mo. 609, 166 S. W. 2d 1077, 1084[11-14]; State v. Wilson (Mo.), 242 S. W. 886, 887[1, 2].

■ Something is said in defendant's brief respecting an arrest of Hayward Fletcher in connection with another matter about 12:30 a. m. Sunday, September 7, 1947, prior to the trial interfering with the preparations for trial and amounting to a denial of due process. The contention is without merit. There was evidence showing: Fletcher was retiring for the night when arrested. No one urged his release other than to prevent a forfeiture of a recognizance in this case. He was released about 7:30 a. m. Sunday. A finding that there was no interference was warranted.

■ There is nothing of record indicating bad faith on the part of the State's attorney in making the statement attributed to him in

the opening statement that Hayward Fletcher had no money that afternoon and shortly thereafter he had $20 and $10 bills. ·The point is not well taken. State v. Rasco, 239 Mo. 535, 579(IX), 144 S. W. 449, 462[24] ; State v. Posey, 347 Mo. 1088, 152 S. W. 2d 34, 40[5, 6].

Both litigants announced they closed their evidence. Twice the court took up the matter of excusing the witnesses and, without objection, twice informed the witnesses they stood excused and advised the attorneys they would prepare the instructions and argue the case at 7:30 p. m. Defendant, when court reconvened, asked to reopen the case and put Hayward Fletcher on the stand. This was refused. There is no indication what his testimony would be. The court considered it unfair to reopen the case for either party, each having announced they had closed their evidence, and the witnesses having been excused and scattered. Under the authorities no abuse of discretion is shown. State v. Allison (Mo.), 300 S. W. 1069, 1070[5, 6] ; State v. Highfill (Mo.), 165 S. W. 2d 642, 643[1] ; State v. Eisenhour, 132 Mo. 140, 148[VI], 33 S. W. 785, 787(6) ; 23 C. J. S. 464, nn 28-31, and § 1056 b.

We have considered all assignments in defendant's brief and some matters not there presented as an assignment. The judgment should be and is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.