STATE of Missouri, Plaintiff-Appellant,

v.

Benny G. SHRIVER,
Defendant-Respondent.

No. 52916.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 15, 1987.

Thomas E. Mountjoy, Springfield, for plaintiff-appellant.

Robert M. Sweere, Springfield, for defendant-respondent.

REINHARD, Judge.

The state appeals[1] after the trial court sustained defendant's pretrial motion to dismiss the information charging defendant with conspiring to commit murder because the information was barred by the three-year statute of limitations, § 556.036.1, RSMo 1978. We reverse and remand.

In its first point, the state contends that Honorable Donald E. Bonacker, a duly qualified circuit judge in Greene County, 31st Judicial Circuit, had no authority to act on the case after the judge had granted a change of venue to Jefferson County, 23rd Judicial Circuit. The state alleges that:

> neither has there been an appointment of record by the Supreme Court of Missouri assigning the Greene County Circuit Judge as a special circuit judge in the Circuit Court of Jefferson County, Missouri, Art. 5, § 6, Mo. Const. 1945 (as amended), nor has there been any request of record by a regular judge of the Circuit Court of Jefferson County, Missouri, for the Greene County Circuit Judge to sit in the 23rd Judicial Circuit, Art. 5, § 15, Mo. Const. 1945 (as amended).

From the limited legal file presented to us,[2] which includes circuit court docket sheets from Greene County and Jefferson

---

1. The state appeals pursuant to § 547.200.1(2), RSMo 1986, and Rule 30.02.

2. As submitted, the legal file includes only court docket sheets from Greene County and Jeffer-

County, we discern the following. The information was filed on September 18, 1986. After sustaining defendant's motion for change of judge on November 25, 1986, the case was assigned to Judge Donald E. Bonacker, in Division III of the Greene County Circuit Court. On December 12, 1986, he overruled defendant's motion to dismiss the information based on the statute of limitations.[3] On the same date, he heard evidence on defendant's change of venue motion. The following orders appear on the Greene County docket sheet:

12/15/86 The Court finds that multi-media publicity concerning defendant Shriver the Back 40 Lounge and the Hitching Post in the Greene County vicinity requires a sustaining of defendant's motion for change of venue. Venue will be changed to the Circuit Court of Jefferson County. *This Judge plans to follow the case and will announce to the parties the date for trial at Hillsboro, MO.* Clerk of the Circuit Court is directed to transmit the original file to the Clerk of the Circuit Court of Jefferson County. 12/17/86 Defendant's Amended Motion for Bill of Particulars and Notice filed. 12/22/86 *On change of venue, case ordered transferred to the 23rd Judicial Circuit, Jefferson County, Missouri.* Case set for jury trial beginning at 10:00 o'clock A.M. on Monday, March 16, 1987. All pre-trial motions not previously ruled set for hearing at 11:00 o'clock A.M. on Friday, March 13, 1987. Pre-trial conference set 9:00 o'clock A.M. on Monday, March 16, 1987. *All proceedings will be in the Division I Courtroom of Jefferson County before Circuit Judge Don Bonacker, who will be assigned by the Supreme Court.* Defendant ordered to appear at all times mentioned above. /s/ Don Bonacker, Circuit Judge 12/29/86 Entire file, copy of judge's docket sheet and bond mailed this date to Jefferson County (emphasis added).

The Jefferson County docket sheet shows that on January 5, 1987, the file was received. On February 20, 1987, the entry shows "Set for trial March 16, 1987, at 9 a.m. Defendant files Motion for Continuance." The March 3, 1987, entry shows that the "Parties agree on the record that motions may be heard in Greene County, Missouri on this date" and that the judge heard several motions on this date. On March 9, 1987, the parties again appeared, and the record shows that the state filed a bill of particulars. The defendant requested the court to reconsider his motion to dismiss the information, which the court agreed to do, taking the motion under advisement. On March 10, 1987, the court entered a written order dismissing the information because it was barred by the statute of limitations.

The state does not dispute the fact that Judge Bonacker was a duly elected and qualified circuit judge. It also does not deny that it appeared before him in Greene County after the change of venue was granted and that not until after the information was dismissed did it challenge his authority.

■ Nothing in the record before us reveals that the judge had been assigned as a special judge by the supreme court, Mo. Const. Art. 5, § 6, or that there had been a request by a regular judge of the Circuit Court of Jefferson County, Mo. Const. Art. 5, § 15. The absence of such information in the record presented to us, however, does not resolve this issue in the manner suggested by the state. A circuit judge is a judge of the State of Missouri and not merely judge of the circuit in which he is elected or appointed. *Cantrell v. City of Caruthersville,* 363 Mo. 988, 255 S.W.2d 785, 786 (1953). Unless something affirmative appears in the record, it is presumed a circuit judge acts with authority. *Green v.*

son County, the felony complaint, the warrant for arrest, the felony information, defendant's motion to dismiss based on the statute of limitations, state's suggestions in opposition to dismissal based on the statute of limitations, defendant's motion for rehearing on the motion to

dismiss, the bill of particulars, and the order dismissing the information.

3. The previous judge had also denied such a motion.

*Walker,* 99 Mo. 68, 12 S.W. 353, 354 (1889); *see also State v. Massey,* 358 Mo. 1108, 219 S.W.2d 326, 328 (1949). It was stated in *Green,*

> How he came to be a special judge, or whether he ever was sworn, generally or in that case, does not affirmatively appear. His actions as special judge are part of the records of that court, however, and in the absence of any showing to the contrary, will be presumed to have been correctly taken. The same presumption of jurisdiction attach to the record of proceedings in circuit courts before special judges as before the regular judge.

*Green,* 12 S.W. at 353–354. Here, Judge Bonacker's order dismissing the case appears in the Jefferson County Circuit Court record. We find nothing in the record affirmatively showing he did not have authority to enter the order. We presume he had authority to do so. This point is denied.

We now reach the critical issue in this case: based on the information alone, is the conspiracy charge against defendant barred by the three-year statute of limitations as a matter of law? We believe not. We note the absence of cases addressing this issue in Missouri and the paucity of such cases in general.

The information alleged that defendant had committed the class B felony of conspiracy,

> in that on or between the 21st day of October, 1982, and September 1, 1985, in the County of Greene, State of Missouri, the defendant Benny G. Shriver, with the purpose of promoting and facilitating the offense of murder in the second degree of Ted Fred Ehlers, agreed with Douglas M. McQueen, Robert C. Hood, Jr., Rudy M. Haldiman, and a person or persons unknown that one or more of them would intentionally kill Ted Fred Ehlers

. . . . . .

The information also alleged the occurrence of 16 overt acts in furtherance of the conspiracy, the first occurring on November 6 or 7, 1982, and the last on September 5, 1985.[4]

---

4. These overt acts were specified with dates in the bill of particulars:

1. Douglas G. McQueen purchased dynamite from Robert C. Hood, Jr. on November 6 or 7, 1982, and on or between December 4–10, 1982;

2. Douglas G. McQueen delivered dynamite to Rudy M. Haldiman so that Haldiman could make explosive weapons to kill Ted Fred Ehlers between November 6–11, 1982, and from December 4 to about December 15, 1982;

3. Rudy M. Haldiman obtained certain supplies and materials to combine with dynamite to construct explosive weapons to kill Ted Fred Ehlers on or between November 6, 1982, and December 31, 1982;

4. Rudy M. Haldiman constructed no less than three explosive weapons to kill Ted Fred Ehlers on or between November 6, 1982, and December 31, 1982;

5. Douglas G. McQueen and Robert C. Hood placed a remote control explosive weapon made by Rudy M. Haldiman on a motor vehicle of Ted Fred Ehlers on November 11, 1982, and on or between November 21, 1982, and December 7, 1982;

6. Douglas G. McQueen hired Robert C. Hood, Jr., to kill Ted Fred Ehlers with firearms or explosive weapons on November 14, 1982;

7. Douglas G. McQueen hired Rudy M. Haldiman to construct explosive weapons with which to kill Ted Fred Ehlers approximately on November 1, 1982;

8. Douglas G. McQueen and Rudy M. Haldiman acquired a remote control transmitting device and other material as component parts of an explosive weapon to kill Ted Fred Ehlers in the months of November and December, 1982;

9. Douglas G. McQueen acquired firearms with which to kill Ted Fred Ehlers on or between November 14, 1982, and December 31, 1982;

10. Douglas G. McQueen provided firearms and explosive weapons intended to kill Ted Fred Ehlers to Robert C. Hood, Jr. on or between November 14, 1982, to December 31, 1982;

11. Robert C. Hood, Jr., placed a remote control explosive weapon made by Rudy M. Haldiman on a motor vehicle of Ted Fred Ehlers between November 21, 1982, and December 7, 1982, at Scorpio's Massage Parlor;

12. Robert C. Hood, Jr., Benny G. Shriver, and Douglas G. McQueen tracked and laid in wait for Ted Fred Ehlers in order to kill Ted Fred Ehlers on several occasions, all in January and February, 1983;

13. Benny G. Shriver provided to Douglas G. McQueen money to purchase materials to

The trial court found that the last overt act in furtherance of the conspiracy occurred in June 1983 and that the acts alleged in paragraph 16 of the information were not in furtherance of the original conspiracy. Because the information was filed on September 18, 1986, more than three years after that last overt act, the court concluded that the information was barred by the three year statute of limitations.

The statute of limitations of an offense begins to run the day after the offense is committed, "or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct *or the defendant's complicity therein is terminated.*" § 556.036.4, RSMo 1986 (emphasis added).

The present criminal conspiracy statute, § 564.016, under which defendant was charged, states in pertinent part as follows:

1. A person is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person or persons that they or one of them will engage in conduct which constitutes such offense.

. . . .

3. If a person conspires to commit a number of offenses, he is guilty of only one conspiracy so long as such multiple offenses are the object of the same agreement.

4. No person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

. . . .

6. For the purpose of time limitations on prosecutions:

(1) *Conspiracy is a continuing course of conduct which terminates when the offense or offenses which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired.*

(2) If an individual abandons the agreement, the conspiracy is terminated as to him only if he advises those with whom he has conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation in it. (Emphasis added).

It is obvious that a conspirator can be prosecuted whether the principal purpose of the conspiracy has been accomplished or not. Here, there is no allegation the conspiracy to commit the murder of Ehlers has been accomplished, nor is there any allegation it has been abandoned.

The state makes no effort to distinguish a conspiracy in which the objective has been accomplished from one in which the objective has not been accomplished. It argues that the last overt act was the payment of money to McQueen, alleged in paragraph 16 of the bill of particulars to have occurred on September 5, 1985. The only case it cites in support of its statute of limitations position is *State v. Smith,* 631 S.W.2d 353 (Mo.App.1982), which held that a co-conspirator's statement, concerning concealment of the conspiracy after the object of conspiracy had been accomplished, was admissible because it was an overt act in continuation of the completed

construct explosive weapons to kill Ted Fred Ehlers from October 22, 1982, to June, 1983;

14. Benny G. Shriver notified Douglas G. McQueen of the whereabouts of Ted Fred Ehlers in order that Douglas G. McQueen could kill or cause to killed Ted Fred Ehlers in the months of December, 1982; January, 1983; and February, 1983;

15. Benny G. Shriver caused Douglas G. McQueen to leave Springfield, Missouri, so as to be unavailable for interview by law enforcement officers in February, 1983;

16. Benny G. Shriver provided money to Douglas G. McQueen so that Douglas G. McQueen would remain silent as to the agreement to kill Ted Fred Ehlers and the acts undertaken to kill Ted Fred Ehlers by paying said money in February and March, 1983, and from April, 1985, to September 5, 1985.

conspiracy. The state argues by analogy that the approach taken in *Smith* should apply to the statute of limitations issue in this case.[5] Thus, under that approach, it contends the information alleges an overt act in furtherance of the conspiracy, the payment to McQueen, in the period of limitation.

■ Defendant contends that there is a legitimate legislative intent "that the statute [of limitations] runs from the date of the last overt act which furthers the conspiracy's underlying crime." He reaches that conclusion from the drafters' comments to § 564.016. The pertinent comment states, "Abandonment by all the parties is usually presumed if neither the defendant nor anyone with whom he conspired does any overt act in pursuance of the conspiracy during the applicable period of limitations, *measured from the date of the agreement*" (emphasis ours). He argues that from the information and the bill of particulars it must be presumed the conspiracy has been abandoned because of the lapse of more than three years between the date of the last overt act and the date of filing of the information.[6] Thus, he believes, the statute of limitations has run as a matter of law.

To support his presumption argument, defendant relies on the Model Penal Code. In so doing he misinterprets § 564.016 and the comments thereto. Although § 564.016 is based on § 5.03 of the Model Penal Code, a significant difference exists between the two. Section 5.03(7) provides,

(7) Duration of Conspiracy. For purposes of Section 1.06(4):

(a) conspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired; and

(b) *such abandonment is presumed if neither the defendant nor anyone with whom he conspired does any overt act in pursuance of the conspiracy during the applicable period of limitation;* and

(c) if an individual abandons the agreement, the conspiracy is terminated as to him only if and when he advised those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation therein. (Emphasis ours).

Conspicuously absent from § 564.016.6 is subsection (7)(b) of § 5.03. Section 564.016 clearly departs from the model code by eliminating subsection (7)(b), which states the presumption on which defendant relies.

In spite of the drafters' comments to § 564.016, the legislature's failure to include § 5.03(7)(b) of the Model Penal Code indicates to us an intent not to adopt a presumption governing abandonment. Thus, we find there is neither statutory nor common law support in this state for the presumption on which defendant relies.

■ Under § 564.016 conspiracy is a continuing offense, chargeable by an agreement and an overt act. It continues until termination by its successful completion,

---

5. We note that the Supreme Court of California has rejected the argument the state makes here to apply the approach for determining the continuation of a completed conspiracy for purposes of admissibility of hearsay statements to statute of limitations issues. *People v. Zamora,* 18 Cal.3d 538, 557 P.2d 75, 80–81, 134 Cal.Rptr. 784 (1976).

6. Defendant would not recognize the payment of money to McQueen, alleged in paragraph 16 of the bill of particulars, as an overt act in furtherance of the conspiracy. He cites *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), and *People v. Zamora,* 18

Cal.3d 538, 557 P.2d 75, 134 Cal.Rptr. 784 (1976), as contrary to the state's argument. In both cases it was determined that the alleged acts of concealment after the completion of the conspiracy were not overt acts in furtherance of the conspiracy for the purpose of the statute of limitations. *Grunewald,* 77 S.Ct. at 971; *Zamora,* 557 P.2d at 89. Both of these cases involved a successfully completed conspiracy and an appeal after a full trial. *Grunewald,* 77 S.Ct. at 968, 974; *Zamora,* 557 P.2d at 77, 90. Here, we have an abandoned conspiracy and a dismissal after the pleadings.

abandonment of the agreement by the conspirators, or withdrawal by the defendant; from the point of termination the statute of limitations begins to run. If the conspiracy has not terminated in one of these three manners, it continues until the filing of the information. Abandonment is not necessarily presumed to occur upon the commission of the last overt act in furtherance of the conspiracy; rather, it remains a matter to be determined from the evidence. Here, the information indicates the conspiracy had not terminated, and, therefore, it continued until the filing of the information.

We also believe that, using defendant's presumption theory, the information withstands a statute of limitations challenge. The information alleges that an agreement was made between October 21, 1982, and September 1, 1985, "with the purpose of promoting and facilitating the offense of murder in the second degree of Ted Fred Ehlers." It also alleges that in furtherance of the conspiracy that payments were made September 5, 1985, to McQueen to remain silent as to the conspiracy. If it is shown that an agreement was made on September 1, 1985, and that payments were made on September 5, as alleged in the information, the conspiracy would be within the three-year statute of limitations. Therefore, the statute of limitations does not bar the information under defendant's presumption theory.

Based on the information and the bill of particulars, we cannot state as a matter of law that the statute of limitations has run. Therefore, the trial court erred in granting defendant's motion to dismiss the information. On remand the statute of limitations remains an issue that can be determined from the evidence.

Reversed and remanded.

GAERTNER, P.J., and CRIST, J., concur.